## Case No. 392.

### ANGLO–CALIFORNIAN BANK v. MAHONEY MIN. CO.

[5 Sawy. 255; 6 Reporter, 705.][1]

Circuit Court, D. California. · Sept. 26, 1878.[2]

CORPORATION—RATIFICATION—DECISION OF COURT—WHEN OPERATIVE—KNOWLEDGE OF DIRECTORS.

1. Where the bank account of a mining company is overdrawn by its president and secretary, without special authority of its directors, the company will, notwithstanding, be held liable for the overdraft, if their acts in this respect be subsequently ratified by the directors. Such ratification may be made by their ordering the issue of a note of the company for the amount overdrawn.

[See note at end of case.]

2. Where a case is tried by a court without a jury, the decision of the court is not operative and binding, until reduced to form and filed or entered of record. Accordingly, where the district court of the state on the twenty-first of June announced its decision declaring that the election of directors of a mining company, then in office, was illegal and void, and that they should be removed from office, and on the same day its findings and decree carrying this decision into effect were prepared and dated, but were not filed with the clerk until June 22: *Held*, That the decree did not take effect until thus filed; and that until then the ousted directors were officers de facto, capable of ratifying the action of its president and secretary in overdrawing its bank account, and of ordering a note of the company to be issued for the amount.

3. The fact that the directors, or some of them, were informed of the decision announced by the court when they passed the resolution ordering the note to be issued, does not impair the efficacy of the resolution as a ratification of the action of the president and secretary in making the overdraft.

[See note at end of case.]

[At law. Action by the Anglo-Californian Bank, Limited, against the Mahoney Mining Company on a promissory note. Trial to the court. Judgment for plaintiff. The defendant afterwards appealed to the supreme court, and the judgment was affirmed. Mahoney Min. Co. v. Anglo-Californian Bank, 104 U. S. 192.]

The facts appear in the opinion of the court.

Wm. H. Sharp, for plaintiff.

Wm. M. Stewart, for defendant.

FIELD, Circuit Justice. The plaintiff is a corporation created under the laws of Great Britain. The defendant is a corporation formed under ·the laws of California. This action is brought to recover the sum of six thousand three hundred fifty-one dollars and seventy-two cents, alleged to be due from the defendant to the plaintiff, with interest from June 21, 1877. It was commenced in a district court of the state, and, on petition of the defendant, was removed to the circuit court

¹[Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

²[Affirmed by supreme court in Mahoney Min. Co. v. Anglo-Californian Bank, 104 U. S. 192.

of the United States. The complaint contains two counts, one for moneys loaned the defendant and moneys expended for its use; the other for an amount due upon a promissory note of the defendant for seven thousand five hundred dollars, bearing date the twenty-first of June, 1877, payable in gold coin one day after date, with interest at the rate of one and one half per cent. a month until paid.

It appears in evidence that from the original organization of the Mahoney Mining Company, up to the twenty-second of June, 1877, the Anglo-Californian Bank acted as its treasurer. Its moneys were from time to time deposited with the bank, and drawn out on·checks of the company signed by its president and secretary. The account taken from the books of the bank, the correctness of which is not disputed, shows a series of deposits made by the company from January 8, 1874, to June 5, 1877, inclusive, and a series of its checks paid by the bank from January 19, 1874, to June 27, 1877, inclusive. Upon this account a balance appears to be due the plaintiff at this latter date, after proper allowances of interest, amounting to the sum demanded in this suit. Of this sum only .thirty-two dollars and thirteen cents were paid after the removal of the directors, as hereafter mentioned.

On the twenty-first of June, 1877, at a special meeting of the directors of the mining company, held in the afternoon of that day, its president informed them that the account of. the company at the bank was overdrawn to the amount of six thousand three hundred and nineteen dollars and fifty-nine cents, and that the managers of the bank required either the money, or a note of the company. A resolution was thereupon adopted authorizing the president and secretary to execute the note in suit. It was made for the sum of seven thousand five hundred dollars, to cover not merely the amount overdrawn, but other anticipated advances. It is admitted by the counsel of the plaintiff that the note can be enforced only for the amount then due, with subsequent interest to date, and he asks a recovery thereon only to that extent.

The liability of the defendant for the amount overdrawn is denied on the ground that its president and secretary were not empowered to overdraw its account with the bank, and thus incur a debt for the company without special authorization of its directors; and that the attempted ratification of their action in this respect by the passage of the resolution on the twenty-first of June, 1877, and the execution of the note in suit, was ineffectual for any purpose, on the alleged ground that the directors had been at that time by judicial decree removed from office.

It· may be true, as contended by counsel, that the president and secretary of the defendant were not empowered to overdraw

its account, and that without special authority of its directors they could not in this way impose a liability upon the company. We do not deem it important to question the correctness of the position; we are inclined to the opinion that it is sound. The company will, however, be held liable for the amount, if the acts of its president and secretary in this respect were subsequently ratified by its directors. Such ratification might have been made directly by a resolution in terms approving of their action, or it might have been made indirectly by ordering the payment of the overdraft, or the issue of evidences of the liability of the company for the amount in the form of a note or bond. The latter mode was pursued; and it accomplished the purpose designed, if the directors who acted in passing the resolution mentioned were then in office. That resolution was a clear recognition and approval of the conduct of the president and secretary, if the directors were at the time capable of acting. The question, therefore, is whether they were then in office.

It appears that in a suit instituted in a district court of the state to remove the directors, a decision was rendered on the twenty-first of June, 1877, at eleven o'clock in the forenoon, declaring that the election of the directors then in office was illegal and void, and that a meeting called for an election of directors on a subsequent day was legal and valid; and that the findings and decree of the court carrying this decision into effect were prepared and dated the same day, but were not filed with the clerk and entered of record until the following day, June 22. The question, therefore, is: when did this decree operate to oust the directors from office? when, in other words, did it take effect? For until then the parties ousted were officers de facto, holding under color of an election, having charge of the affairs of the company, and capable of binding it in all matters legitimately devolving upon directors of the company. Baird v. Bank of Washington, 11 Serg. & R. 411; Delaware & H. Canal Co. v. Pennsylvania Coal Co., 21 Pa. St. 131.

It seems to us clear that the decree did not take effect until it was regularly filed, or entered of record. Until it left the possession of the judge of the court, he could change it in any and all particulars; he could add to it, or limit, or reverse it. By the oral decision he had only announced his opinion; that opinion did not take the form of an authoritative decree until it had been filed with the clerk, and thus became a matter of record. Until then it was not binding upon any one. The case was tried by the court without the intervention of a jury, and in such cases its findings must precede the entry of the decree, and the statute requires that they shall be filed with the clerk. Code Civil Proc., § 632.

The case cited by counsel from the supreme court of Vermont (Town of Huntington v. Town of Charlotte, 15 Vt. 50) does not, in our judgment, militate against these views. The opinion of the court in that case had reference to the formal enrollment of the decree, for it says that the decree was, for all the purposes intended, good when passed, that is, when reduced to form, and approved by the judge; and the question was, whether the omission of the clerk to formally spread it on the records prevented it from taking effect at the time when it was thus rendered. The court held that it did not; that the efficacy of the judgment did not depend upon the action of a functionary who had nothing to do with its rendition, and who, by law, was vested with no power or authority but the mere ministerial duty of enrolling it. We see nothing to question in this decision, but it has no application to the case at bar. Here there was nothing with reference to which the clerk could act at all until the findings and decree were filed by the district judge. Until then there was no legal form given to the decision of the court. The findings prepared required, under the statute, the signature of the judge, and their previous filing was essential to the entry of any judgment. The clerk could not add the signature of that officer, even if he could have drawn up in form the conclusions which the court had announced. See Whitney v. Belden, 4 Paige, 140; and 2 Daniell, Ch. Pr. 1217.

The fact that the directors, or some of them, were informed of the decision announced by the judge of the district court, when the resolution was passed, does not change the efficacy of the resolution as a ratification of the action of the president and secretary in making the overdraft. They knew that the decision was not necessarily final; that it might possibly be changed upon petition of counsel, or upon the judge's own motion. They knew at least that a decision announced was not a decree entered, and they were not required to govern their action as though the one was equally operative as the other upon their position and rights as directors.

It is also contended by counsel of the defendant, that the resolution was ineffectual as a ratification, on the alleged ground that it was passed while an order, made in another suit by a state court, was in force restraining the parties from acting as directors. That case was subsequently abandoned; and it is stated by counsel of the plaintiff here, that the order was at the time discharged. But assuming that it was not discharged when the resolution was passed, we do not see how it can be held to have affected the plaintiff, not a party to the suit. The parties disobeying the order may have been proceeded against as for a contempt in the state court, but the order could not impair the efficacy of their action with a third party.

Upon a careful consideration of the whole

case, we have come to the conclusion that the plaintiff is entitled to recover against the defendant upon the note for the amount of the overdraft, as shown by the account, and expressed in the resolution of the twenty-first of June, 1877, namely, the sum of six thousand three hundred and nineteen dollars and fifty-nine cents, with interest at the rate specified. Findings will be filed to that effect, and judgment entered thereon.

[NOTE. The judgment in this case was affirmed by the supreme court. Mahoney Min. Co. v. Anglo-California Bank. 104 U. S. 192. Touching upon the liability of the mining company for the amount of any overdraft checks of its president and secretary, Mr. Justice Harlan, speaking for the court, said that the mining company had power, under its charter, to borrow money "for use in its corporate business, and since an indebtedness thus created would, in the usual course of business, be evidenced by the checks of its president and secretary, the presumption should be indulged, not only that those officers, in making an overdraft, did not exceed their authority, but that the moneys thus obtained were paid over to or received by the company. * * * That presumption, if not, under the special circumstances of this case, conclusive, might have been overthrown by affirmative proof of want of authority, express or implied. * * * There is, however, no such proof in this case. * * * And the finding that 'no resolution or special authority of the defendant was shown authorizing its president or secretary, or either of them, to overdraw its account in bank.' fairly interpreted, means nothing more than that no proof was made, either way, on that point."]