## THE VIGILANCIA.

## THE ALLIANCA.

### ATLANTIC TRUST CO. v. THE VIGILANCIA et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1896.)

1. CHATTEL MORTGAGES—VALIDITY—RIGHTS OF LIEN CREDITORS.

One having a lien upon a vessel, as by judgment and execution, is entitled to challenge the validity of previous mortgages; and, if they are void by force of any statute, such as the statute against usury, or that relating to chattel mortgages, his lien must prevail, even though, as between the parties, the mortgages may be sufficient to transfer the title.

2. CORPORATIONS—USURIOUS MORTGAGES—RIGHTS OF LIEN CREDITORS.

A lien creditor of a New York corporation cannot invalidate a prior mortgage, on the ground that the bonds secured thereby were sold at such a discount as to make the mortgages void for usury; for the state statute, which declares that no corporation shall hereafter interpose the defense of usury (Laws 1850, c. 172), as construed by the state courts, operated as a repeal of the statutes of usury as to all contracts by which corporations stipulate to pay interest.

3. SHIPPING—MORTGAGES—RIGHTS OF LIENORS—CHATTEL MORTGAGE LAWS.

A lienor of a vessel owned in New York cannot secure priority over previous mortgages thereon by showing that they were not filed and refiled, as required by the state laws relating to chattel mortgages, when it appears that they were recorded in the office of the collector of the port of New York before he acquired his lien; for state statutes are inoperative as to vessel mortgages which have been properly recorded, pursuant to the laws of the United States.

4. CORPORATIONS—MORTGAGES BY IRREGULARLY ELECTED DIRECTORS—ESTOPPEL.

A lien creditor of a corporation cannot secure priority over previous mortgages, on the ground that the directors who authorized the execution thereof were elected at a stockholders' meeting convened without the notice required by the by-laws, when it appears that the bonds secured by

such mortgages were sold, and the proceeds received and used by the corporation, without any stockholder ever questioning the transaction.

5. SAME.

If the stockholders of a corporation permit persons irregularly elected, or disqualified, to exercise all the functions of directors, such persons are, as to third parties, who have acted on the faith of their ostensible authority, the directors of the corporation; and the corporation, by a subsequent acquiescence. or acts of ratification, is estopped from questioning their authority.

6. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS.

A state statute, making the written consent of stockholders owning two-thirds of the stock of a corporation a prerequisite to the execution of a valid mortgage by it, would, if construed as applicable to mortgages executed in compliance with a valid contract, made prior to the passage of the statute, be unconstitutional, as impairing the obligation of contracts.

7. CORPORATIONS—EXECUTION OF MORTGAGES—CONSTRUCTION OF STATUTE.

Laws N. Y. 1890, c. 566 (which, together with chapter 565, constituted a revision of the laws relating to corporations), repealed, among others, section 2 of chapter 228 of the Laws of 1852, which section, by implication, authorized corporations organized thereunder to mortgage their property. The repealing chapter contained, in section 161, a saving clause, which declared that the repeal should not affect or impair any right acquired under any law thereby repealed. *Held*, that an accrued contract right to have a corporation, organized under the act of 1852. execute a mortgage on its steamship, was within the saving clause, so as to render inapplicable to such mortgage the new provision, contained in Acts 1890, c. 564, requiring the written assent of the holders of two-thirds of the corporate stock before a valid mortgage could be executed.

Appeal from the District Court of the United States for the Southern District of New York.

James McKeen, for appellant R. Hutson.

Maxwell Evarts (Robt. D. Benedict, on the brief), for appellants Collis P. Huntington and others.

W. P. Butler and Cary & Whitridge, for appellants John Crosby Brown and others.

Edmund L. Baylies (Carter & Ledyard and Walter F. Taylor, on the brief), for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The steamships having been sold upon a writ of venditioni exponas issued upon a decree in rem in a suit in the district court of the United States for the Southern district of New York, the proceeds, after satisfying the decree, were paid into the registry of the court. The Atlantic Trust Company, claiming title to the proceeds as a mortgagee of the vessel, under two mortgages executed to it, as a trustee for bondholders, by the United States & Brazil Mail Steamship Company, filed its petition, praying that the proceeds be paid over to it towards satisfying the bonds secured by the mortgages. The appellant Hutson intervened, and answered in the proceeding, claiming a lien upon the proceeds under an execution issued upon a judgment against the United States & Brazil Mail Steamship Company, levied upon the steamships prior to the act. It is insisted by the appellant that the mortgages of the Atlantic Trust Company did not transfer the title of the steam-

ships, and, consequently, of the proceeds, as against him, because (1) they were void for usury; (2) they were not filed conformably with the state statutes respecting mortgages; and (3) they were never validly executed by the steamship company.

The United States & Brazil Mail Steamship Company was a corporation in the city of New York, duly organized pursuant to an act of the legislature, entitled "An act for the incorporation of companies formed to navigate the ocean by steamships," and the various acts amendatory thereof, having its principal office for managing its business in the city of New York. It was the owner of three steamships, the Alliance, the Advance, and the Finance,—vessels duly registered in the office of the collector of the port of New York. December 12, 1889, for the purpose of borrowing money to pay off its outstanding obligations, and of constructing and equipping two new steamships, the corporation, by its president and treasurer, pursuant to a vote of authorization of its then acting board of directors, executed a mortgage, bearing date July 1, 1889, to secure the payment of 1,250 bonds, of $1,000 each, to the Atlantic Trust Company, as trustee, upon the three steamships, and upon all its right, title, and interest which it then had or might thereafter acquire in two new steamships then in process of construction at Chester, Pa., but unfinished, and not admitted to registry, to be named, respectively, the Seguranca and Vigilancia, or by whatever name the same should be known. The mortgage contained a covenant that the mortgagor would execute and deliver to the mortgagee a further mortgage upon the two new steamships as soon as they should be completed and entitled to a certificate of registry. December 12, 1889, the mortgage was duly recorded in the office of the collector of the port of New York. The Vigilancia was completed on the 4th day of December, 1890, and on that day duly registered in the office of the collector of the port of New York. June 5, 1891, the steamship company, by its vice president and treasurer, acting by the authority of its board of directors, executed and delivered to the Atlantic Trust Company a supplementary mortgage on the steamship Vigilancia to secure said bonds, as required by the covenants in that regard in the original mortgage. June 13, 1891, the supplementary mortgage was duly recorded in the office of the collector of the port of New York.

Because of the lien acquired by his execution, the appellant is in a position to challenge the validity of the mortgages, and, even though they were sufficient, as between the mortgagor and the mortgagee, to transfer the title to the vessels, if they were void by force of the statutes against usury, or in respect to chattel mortgages, his lien must prevail. Unlike a creditor at large, who has no status in that behalf, except through the medium of a representative of the whole body of creditors, such as a receiver, a lien creditor can invoke any statute which invalidates a hostile lien. In the absence of some such statute, a lien creditor by judgment and execution can have no better title to the property against which he asserts his lien than he acquired from the judgment debtor; and any previous transfer of the property by the judgment debtor, which was valid as be-

tween the immediate parties to it, is equally valid as to him. Osterman v. Baldwin, 6 Wall. 116; Sisson v. Hibbard, 75 N. Y. 542; Lamont v. Cheshire, 65 N. Y. 30.

The bonds which the two mortgages were created to secure were negotiated at 80 cents on the dollar of their face value, and the appellant contends that the mortgages were void for usury. A sufficient answer to this contention is found in the statute of New York (Laws 1850, c. 172), which declares that no corporation shall hereafter interpose a defense of usury. According to the repeated and uniform construction placed upon it by the highest courts of the state, this statute operated as a repeal of the statutes of usury as to all contracts with corporations stipulating to pay interest. Curtis v. Leavitt, 15 N. Y. 85; Trust Co. v. Packer, 17 N. Y. 52; Rosa v. Butterfield, 33 N. Y. 665; Stewart v. Bramhall, 74 N. Y. 87; Bank v. Wheeler, 60 N. Y. 613; Gamble v. Water Co., 123 N. Y. 108, 25 N. E. 201; Duncomb v. Railroad Co., 84 N. Y. 190. As thus construed, the statute has become a rule of property, and to question it now would unsettle titles in which enormous investments have been made. A very large proportion of the bonds secured by corporate mortgages are originally negotiated at a discount beyond the legal rate of interest; and it is quite too late to urge that the language of the statute only operates upon a corporation in personam, and not upon the contract it has made.

The contention, for the appellant, that the mortgages are void, because not filed and refiled as required by the provisions of the state statute in regard to chattel mortgages, is sufficiently met by the proof that they had been duly recorded in the office of the collector of the port before the appellant acquired his lien, and even before the debt originated upon which his lien is founded. State statutes are inoperative as to vessel mortgages, which have been properly recorded pursuant to the laws of congress. Bank v. Smith, 7 Wall. 646; Aldrich v. Aetna Co., 8 Wall. 491.

It is insisted, for the appellant, that the first of the two mortgages was not properly executed, because the board of directors who authorized the president and treasurer to execute it had not been duly elected, the stockholders' meeting at which their election took place not having been called conformably with the by-laws of the company. The by-law required notice of the time and place of holding the election to be published "not less than twenty days previous thereto, in a newspaper printed in the city of New York." The meeting was held May 28, 1889, and the first publication of the notice was May 8, 1889. Whether this notice was sufficient or not we do not care to inquire. The directors who were elected proceeded to act as such under color of the election, had possession of the offices and books of the company and custody of its corporate seal, administered all its affairs, and their authority was never called in question by any of the stockholders. The corporation received the avails of the mortgage bonds, used them in paying its debts and building the new steamships, and paid the interest on the mortgage for several years, and until it became financially unable to do so. Persons dealing with a corporation are under no obligation to

investigate and ascertain whether those who are recognized and held out by it as its directors have been duly and regularly chosen, or whether they are duly qualified in any respect. Directors are but the agents of the corporation, and, like the agents of individuals, may be invested with an apparent authority, which is equivalent to an actual authority, in their dealings with third persons; and if those who have not been regularly elected, or are ineligible or disqualified, are permitted by the body of stockholders to exercise all the functions of the office, they are, as to third persons, who have acted on the faith of their ostensible authority, the directors of the corporation; and the corporation, by a subsequent acquiescence or acts of ratification, is estopped from questioning their authority. Railroad Co. v. McPherson, 35 Mo. 13; Despatch Line of Packets v. Bellamy Manuf'g Co., 12 N. H. 223; Anglo-Californian Bank v. Mahoney Min. Co., 5 Sawy. 255, Fed. Cas. No. 392; Richards v. Mechanics' Institute (Pa. Sup.) 26 Atl. 210; Trustees v. Hills, 6 Cow. 23; Green v. Cady, 9 Wend. 414; Atlas Nat. Bank v. F. B. Gardner Co., 8 Biss. 537, Fed. Cas. No. 635. If it were necessary to decide the question, we should not hesitate to affirm, in view of the receipt of the avails of the mortgages by the corporation, and its payment of the interest on the mortgages, that, if the directors had never authorized the president and treasurer to execute the mortgages, the instruments, nevertheless, would be valid and binding securities, as between the corporation and the mortgagee.

The appellant contests the validity of the second or supplementary mortgage because it was not accompanied by the written consent of the stockholders to its execution, in compliance with the provisions of chapter 564, Laws 1890, a statute of New York enacted intermediate the execution of this mortgage and the first mortgage. The statute reads as follows:

"In addition to the powers conferred by the general corporation law, every stock corporation shall have power to borrow money or contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and may issue and dispose of its obligations for any amount so borrowed, and may mortgage its property and franchises to secure the payment of such obligations, or of any debt contracted for the purposes herein specified; and the amount of the obligations issued and outstanding at any one time secured by such mortgages, excepting mortgages given as a consideration for the purchase of real estate, and mortgages authorized by contracts made prior to the time when this act shall take effect, shall not exceed the amount of its paid-up capital stock, or an amount equal to two-thirds of the value of its corporate property at the time of issuing the obligations secured by such mortgages, in case such two-thirds value shall be more than the amount of such paid-up capital stock. No such mortgages excepting purchase money mortgages shall be issued without the written consent, duly acknowledged, of the stockholders owning at least two-thirds of the stock of the corporation, and such consent shall be filed and recorded in the office of the clerk or register of the county where it has its principal place of business."

Although this statute is apparently intended primarily for the protection of the stockholders of the corporation, in view of the interpretation placed upon cognate statutes by the highest court of the state, it must be construed as operating to destroy the validity and

lien of mortgages executed without the requisite consent. Vail v. Hamilton, 85 N. Y. 453; Bank v. Averell, 96 N. Y. 467. In the language of the latter case:

"No assent of the stockholders having been obtained, it was invalid, and created no present lien upon the property."

If the statute were intended to apply to mortgages by a corporation, executed pursuant to a valid contract with the mortgagee, made prior to the enactment, we are unable to doubt that it would impair the obligation of the contract, and consequently be inoperative, as to such mortgages, because of the constitutional interdiction.

By the covenant contained in the earlier mortgage, the mortgagee was entitled to a further mortgage as soon as the new steamships should be completed; and a court of equity would have compelled specific performance of the contract, notwithstanding the refusal of the directors and the entire body of stockholders of the steamship company. The right to that remedy was an inseparable element of the contract,—as much so as though incorporated into it by express language. The remedy of a contract "is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract, is forbidden by the constitution, and is therefore void." Edwards v. Kearzey, 96 U. S. 595; Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190; Louisiana v. New Orleans, 102 U. S. 203. To require a party who has a plain and easy remedy against a corporation by a suit against it in a court of equity to seek out its various stockholders, scattered, perhaps, throughout the different states of the Union, make them parties to the suit, and prosecute it against all of them, until the requisite majority have executed consents, pursuant to a decree against them for specific performance, would impose upon him an intolerable burden, and sometimes, possibly, interpose obstacles which would prove fatal to his success. The statute applies to small mortgages as well as large ones, and what would be the value of a contract for the delivery of a small mortgage if it had to be enforced in such a suit? The constitutional validity of a statute is determined, not by its actual consequences in a particular case, but by the nature of the consequences which it may legitimately effect.

The intention to impair the obligation of previous contracts is not to be unnecessarily imputed to the statute; and the salutary rule of construction, by which courts endeavor to give such a meaning to a statute as will prevent an interference with vested rights, can be safely applied to the present case, in view of other provisions of the general scheme of legislation of which it is a part. Chapters 565 and 566 of the Laws of 1890 were concurrently enacted, and are to be considered together as a revision of the statutes relating to corporations. Chapter 566, while repealing sections 3–14 of chapter 228 of the Laws of 1852, under which the steamship company was incorporated, left in force section 2 of that chapter, which was the section conferring power upon such corporations to convey, and impliedly to mortgage, their property. Chapter 566, among other

things, repealed that section, but contained a saving clause (section 161), which declared that the repeal should not affect or impair any act done or right accruing or acquired under or by virtue of any law thereby repealed, but that the same might be asserted and enforced as fully and to the same extent as though there had been no repeal.

The agreement to execute a mortgage, and the right acquired by the mortgagee to have it executed, were founded upon the power delegated to the corporation by the repealed law, and by the saving clause were not to be affected or impaired in any way. The provision imposing new conditions upon the execution of corporate mortgages must be construed harmoniously with the saving clause, and, thus read, is apparently not intended to apply to mortgages the right to which had accrued, and which, therefore, in contemplation of a court of equity, were already executed.

These views lead to the conclusion that the mortgages of the Atlantic Trust Company are in all respects valid and effectual, and entitle it to the proceeds in the registry of the court.

The decree of the district court is therefore affirmed, with costs.