[L. A. No. 9819. In Bank.—November 4, 1927.]

DAVE MARTELLO, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF LOS ANGELES et al., Respondents.

[1] COURTS—JUDGES PRO TEMPORE—AMENDMENT TO CONSTITUTION—CONSTRUCTION.—The former method of selecting judges *pro tempore* upon stipulation of parties litigant was amended out of the constitution by *ex industria* omitting it in the amendments adopted at the general election on November 2, 1926 (Stats. 1925, chap. 48, p. 1369).

[2] ID. — SECTION 72, CODE OF CIVIL PROCEDURE — IMPLIED REPEAL. — Although section 72 of the Code of Civil Procedure, which provided for the selection of justices *pro tempore*, was not expressly repealed by the legislature, it was impliedly repealed by the constitutional amendment adopted November 2, 1926, relative to the judicial department.

[3] ID.—CONFLICT BETWEEN STATUTE AND CONSTITUTION—CONSTRUCTION—RULE.—Where there is a conflict between statutory and constitutional authority, the rule is that all laws which are inconsistent with the constitution cease upon the adoption thereof.

[4] ID. — GRANT OF POWER — IMPLIED NEGATION.—In the grants of powers and in the regulation of the mode of exercise, there is an implied negative; an implication that no other than the expressly granted power passes by the grant and that it is to be exercised only in the prescribed mode. Affirmative words may and often do imply a negative, not only of what is not affirmed, but of what has been previously affirmed, and as strongly as if expressed; and an affirmative enactment of a new rule implies a negative of whatever is not included, or is different, and if by the language used a thing is limited to be done in a particular form or manner, it includes a negative that it shall not be done otherwise. An intention will not be ascribed to the law-making power to establish conflicting and hostile systems upon the same subject, or to leave in force provisions of law by which the later will of the legislature may be thwarted and overthrown.

[5] ID.—REFORM OF JUDICIAL SYSTEM—METHODS OF INVESTMENT OF JUDICIAL AUTHORITY.—Since the amendments of the constitution adopted November 2, 1926, reforming our judicial system, there are three, and only three, distinct methods provided for the in-

3. See 5 Cal. Jur. 569; 6 R. C. L. 40.
4. See 5 Cal. Jur. 571, 587; 6 R. C. L. 49.

vestment of judicial authority, to wit, by election, appointment, and assignment. Authorization by stipulation is not included in any one of the methods or systems so provided.

[6] ID.—JUDICIAL COUNCIL ACT—CONSTITUTIONAL AMENDMENTS OF 1926—STIPULATION OF PARTIES.—The contention that if the Judicial Council Act and the constitutional amendments of 1926 reforming the judicial system operated to terminate the powers of a judge *pro tempore* who had been selected by stipulation of the parties and who had entered upon the discharge of his duties prior to the adoption of said act and amendments, they are unconstitutional to the extent that they affect the parties litigant and the judge *pro tempore* as being violative of the constitution of the United States, which forbids the passage of laws impairing the obligation of contracts, cannot be maintained, as such a stipulation, which was but one of the necessary preliminary acts in the process of conferring jurisdiction upon or investing the person selected to try the cause with judicial authority, is not a contract in the sense and meaning of contracts which vest property rights in the citizen and which are protected by constitutional guaranties.

[7] ID. — TERMINATION OF AUTHORITY OF JUDGE PRO TEMPORE. — As section 72 of the Code of Civil Procedure was repealed *eo instante* by necessary implication by the adoption of the Judicial Council Act and the constitutional amendments with reference to the judicial system, the authority of a judge *pro tempore* appointed by a stipulation of the parties to litigation ceased upon the passage of said provisions and where no final judgment had been rendered or entered he had no authority thereafter to render one.

[8] ID.—PUBLIC OFFICE — POWER TO CREATE AND ABOLISH. — It is well settled that the sovereign power which creates a public office may abolish it or change the tenure thereof even though the tenure of an incumbent is affected thereby, unless restricted by the constitution. Such offices are not held by contract or grant.

---

(1) 12 **C. J.**, p. 725, n. 9.    (2) 12 **C. J.**, p. 726, n. 20.    (5) 33 **C. J.**, p. 1029, n. 22.    (6) 12 **C. J.**, p. 1017, n. 21.    (8) 29 **Cyc.**, p. 1368, n. 54.

APPLICATION for a Writ of Prohibition to prevent certain action by a judge *pro tempore.* Writ granted.

---

7.  See 14 **Cal. Jur.** 802.

8.  Power to abolish or discontinue office, notes, 4 **A. L. R.** 205; 37 **A. L. R.** 815. See, also, 5 **Cal. Jur.** 773; 21 **Cal. Jur.** 974; 32 **R. C. L.** 578.

The facts are stated in the opinion of the court.

Faucett & Ring for Petitioner.

Max Schleimer for Respondent.

Overton, Lyman & Plumb and John De Ferie, *Amici Curiae.*

SEAWELL, J.—This proceeding comes to us for decision by reason of an order made by this court granting petitioner a hearing herein after decision rendered by the district court of appeal denying petitioner's application for a peremptory writ of prohibition.

Prior to the adoption by the people, at the general election held in this state on November 2, 1926, of the constitutional amendments proposed by the state legislature at its forty-sixth session relative to the judicial department (chap. 48, Stats. 1925, p. 1369), amending the state constitution by adding to article VI a new section, to be numbered 1a (creating a judicial council), and sections 6, 7 and 8 of said article, there was pending in the superior court of the county of Los Angeles an action entitled John A. Ranney, Plaintiff, v. Dave Martello et al., Defendants. By the stipulation of the parties to the action, R. E. Abbott, Esq., a duly and regularly licensed attorney at law, fully qualified to engage in the practice of law in all the courts of this state, was named and agreed upon by said parties as a judge *pro tempore* to try said cause, and his action therein was to have the same effect as if he was a judge of said superior court. The stipulation was approved by an order duly made and entered by a judge of said superior court. The trial progressed to a stage whereupon, on October 19, 1926, said judge *pro tempore* directed respondent clerk of said superior court to make a minute entry in the records of said cause to the effect that judgment go for plaintiff in the sum of $5,940 and for costs of suit. Nothing further was done than the entry of said minute order until December 4, 1926, on which day the attorneys for petitioner were served with proposed findings of fact, conclusions of law and the proposed decision of respondent court. It will be noted that the act creating a judicial council and adopting the constitutional amend-

ments whereby, it is claimed, all acts providing for the trial of causes by judges *pro tempore* were repealed, was ratified prior to the day upon which service of the findings of fact, conclusions of law, and proposed judgment was made upon petitioner's attorneys. If, therefore, an irreconcilable conflict arose as between said act and said amendments and any unrepealed statute which would have been sufficient authority for a continuance of the proceedings to a finality by the judge *pro tempore* but for said conflict, the constitutional amendments must prevail, provided they do not impair the obligation of a contract or deprive either of the parties litigant in the court below of property without due process of law or otherwise infringe upon some right protected by the federal constitution.

To prevent said judge *pro tempore* from entering judgment as above indicated, petitioner prayed for the issuance of a peremptory writ of prohibition directed against said court and the judge and clerk of said court, claiming that said amendments, when ratified, *eo instante* abolished the office of judge *pro tempore* and withdrew from the judge the judicial authority which the law invested him with prior to the adoption of said amendments to the constitution.

The adoption of the judicial council plan introduced into our judicial system a new method of disposing of the judicial business of the state, which, in the language of the act creating it, was adopted "in the interest of *uniformity* and *expedition* of business." (Italics ours.)    One of its main purposes was to create an administrative judicial council or committee, of which the chief justice of the state supreme court is at the head, vested with authority to marshal the judicial forces of the state into a unified form in the interest of "improving the administration of justice." The old practice of a judge of the superior court of one county holding court for a judge of the superior court of another county at the request of the latter was in practice a matter largely resting in judicial comity, and, therefore, was lacking in administrative cohesiveness which is essential for the accomplishment of a higher degree of efficiency. As a second and third part of the former plan, section 8, article VI, before the amendments of 1926, provided that upon the request of the governor of the state it became the duty

of a judge of the superior court of any county to hold a superior court session for and in place of the duly elected judge in and for any other county of the state, and, finally, it was made permissible for parties litigant or their attorneys to stipulate that a cause in the superior court be tried by a judge *pro tempore,* who must be a member of the bar, approved by the court. It is very clear that the former plan of judicial assignments, if it can be thus characterized, has been superseded by the judicial council plan. In fact, not a vestige of the old plan is to be found in the new. **[1]** The former method of selecting judges *pro tempore* upon stipulation of parties litigant was patently repugnant both to the letter and spirit of the comprehensive plan devised by the Judicial Council Act for the assignment or motation of judges to the several courts of the state as the judicial business of the state may require. This being so, one or the other must fall, and, under the well-recognized rule of construction, the latest expression of the people upon the subject must prevail. Clearly the provisions of section 72, Code of Civil Procedure, which are but a *verbatim* repetition of the permissive language of the constitution as to the selection of judges *pro tempore,* cannot be harmonized with the evident purpose of the people as shown by the adoption of the more recent elaborate system for the expedition of judicial business. If the intent of the people to abolish the judge *pro tempore* plan could be said to be in doubt, by reason of a failure to abolish said plan by express language, such doubt is dispelled by the fact that section 8, article VI, state constitution, before amendment, contained the judge *pro tempore* provision, but no reference whatever was made to the trial of causes by a judge *pro tempore* in said amended section 8, article VI. In short, the judge *pro tempore* plan was amended out of the constitution by *ex industria* omitting it therefrom. The express provisions for trial of causes by a judge *pro tempore* in section 8 before amendment and their absence in the amendment, taken in connection with the object to be effectuated, leave no room to doubt that it was excluded *ex industria* by the framers of the constitutional amendments. (*People* v. *Ah Chung,* 5 Cal. 103.)

**[2]** It is urged as an argument entitled to grave consideration that although the amendments to the constitu-

tion omitted to re-establish judges *pro tempore* as a part
of our judicial system, nevertheless the legislature of 1927
did not repeal section 72, Code of Civil Procedure, which
provides for the selection of judges *pro tempore* precisely
as the constitution did before its amendment, and hence
we have a code section authorizing the continuance of trial
of causes by judges *pro tempore.* [3] We think there is
no argumentative force in this circumstance in view of the
rule of construction in case of conflicts that may arise as
between statutory and constitutional authority. The su-
premacy of the constitution over legislative enactments is
expressed in general terms in article XXII, section 1
thereof, wherein it is provided that "all laws which are
inconsistent with this Constitution shall cease upon the
adoption thereof," etc., and, of course, all amendments
made to the constitution become a part of that instrument.
If respondents' construction be the correct one, article I, sec-
tion 22, state constitution, which provides that the provi-
sions of the constitution are *mandatory* and *prohibitory,* un-
less by express words they are declared to be otherwise, must
be held, contrary to the rule of construction announced in
the well-considered case of *People* v. *Wells,* 2 Cal. 198, and
many others that have followed it, to have no application
to the creation of our judicial department of government.

As to the application of the rules of express mention and
implied exclusion, Mr. Sutherland (Lewis' Sutherland on
Statutory Construction, 2d ed., vol. 1, sec. 249) said:

[4] "In the grants [of powers] and in the regulation
of the mode of exercise, there is an implied negative; an
implication that no other than the expressly granted power
passes by the grant; that it is to be exercised only in the
prescribed mode. . . . Affirmative words may and often do
imply a negative, not only of what is not affirmed, but of
what has been previously affirmed, and as strongly as if
expressed. An affirmative enactment of a new rule implies
a negative of whatever is not included, or is different; and
if by the language used a thing is limited to be done in a
particular form or manner, it includes a negative that it
shall not be done otherwise. An intention will not be
ascribed to the law-making power to establish conflicting
and hostile systems upon the same subject, or to leave in

force provisions of law by which the later will of the legislature may be thwarted and overthrown.''

[5] The circumstance that section 72, Code of Civil Procedure, remains unrepealed by express mention is without persuasive force since the language of the constitution reforming our judicial system is clear and positive and its object manifest. Three, and only three, distinct methods are provided for the investment of judicial authority, to wit, by *election, appointment,* and *assignment.* Authorization by stipulation is not included in any one of the methods or systems above provided. ''In construing a constitution, resort may be had to the well-recognized rule of interpretation contained in the maxim *expressio unius, exclusio alterius est;* therefore the expression of one thing in a constitution may necessarily involve the exclusion of other things not expressed.'' (5 Cal. Jur. 587.) The fact that section 72, Code of Civil Procedure, was not expressly repealed by the legislature is more consistent with the theory that it escaped the attention of the legislature rather than that it was supposed to retain legislative life.

[6] We now come to the argument in support of the claim that if the Judicial Council Act and said amendments of 1926 operated to terminate the powers of the judge *pro tempore* who had been selected and who had entered upon the discharge of his duties prior to the adoption of said acts and amendments, they are unconstitutional to the extent that they affect the parties litigant and the judge *pro tempore* as being violative of the constitution of the United States, which forbids the passage of laws impairing the obligation of contracts. This claim is based upon the proposition that the stipulation, which was but one of the necessary preliminary acts in the process of conferring jurisdiction upon or investing the person selected to try the cause with judicial authority, is a contract in the sense and meaning of contracts which vest property rights in the citizen and which are protected by constitutional guaranties. There is no ground to support the claim that any property right whatsoever inhered or vested in the judge or parties litigant by reason of their mutual participation in the formation of a tribunal which, but for the repealing constitutional provisions, would have had powers equal to those of a regularly constituted court

in deciding the case proposed to be submitted to it. As was said in *Deupree* v. *Payne,* 197 Cal. 529 [241 Pac. 869], and supported by an ample array of cases decided by this court, " . . . it is well settled that there is no vested right in an incumbent to an office, nor any property right therein paramount to the public interest." It must follow that the judge of a court specially created for public convenience holds his office by no firmer tenure nor has he any greater rights than one who is inducted into office by the usual and ordinary methods provided by law. (*Graziani* v. *Denny,* 174 Cal. 176 [162 Pac. 397].) For reasons equally cogent, resting upon considerations of public welfare, a party litigant can have no vested right to have his case tried and determined by any particular judge or court, howsoever constituted. The creation of courts of law is an affair of government, and may not be subordinated to private convenience or interest.

[7] In view of what has been said, section 72 of the Code of Civil Procedure was repealed *eo instante* by necessary implication by the adoption of the Judicial Council Act and said constitutional amendments, and inasmuch as no final judgment had then been rendered or entered by the judge *pro tempore* in the cause which he held under submission, he was divested of jurisdiction to thereafter render a judgment. The rule is thus stated in *Ball* v. *Tollman,* 135 Cal. 375 [87 Am. St. Rep. 110, 67 Pac. 339] :

"It does not follow that jurisdiction once acquired always remains. A court or judge may have authority at one time to proceed, and his authority may afterwards be divested by statute. 'In all cases where a court is rendered incompetent to proceed, its proceedings during such incompetency are as invalid as though it had never possessed jurisdiction' (Freeman on Void Judicial Sales, sec. 7; Freeman on Judgments [4th ed.], sec. 121) ; and this incompetency may arise from being deprived of jurisdiction of the subject matter as well as of the person. . . .

"As all the proceedings subsequent to the repeal of the statute were without authority, execution was without authority, and all proceedings under it were void (Freeman on Judgments [4th ed.], sec. 117) . . . "

*Connolly* v. *Ashworth,* 98 Cal. 205 [33 Pac. 60], announces a rule of law that has application to the instant

case. In that case the trial court gave its written, signed decision, which was not filed with the clerk of the court until after the term of office of the judge had expired. In disposing of the question as to the validity of the judgment this court said:

". . . it is clear that the trial of a cause by the court is not concluded until the decision is filed with the clerk; and when the term of office of the judge who tried the case expires before such decision is filed, the fact that it was signed by him and ordered by his successor in office to be filed with the clerk, and was so filed, is not sufficient to sustain the judgment entered thereon. (*Hastings* v. *Hastings,* 31 Cal. 95; *Van Court* v. *Winterson,* 61 Cal. 615; 2 Hayne on New Trial and Appeal, secs. 237, 246; *Warring* v. *Freear,* 64 Cal. 54 [28 Pac. 115]; *Comstock Q. M. Co.* v. *Superior Court,* 57 Cal. 625; *Polhemus* v. *Carpenter,* 42 Cal. 375; *Anglo-Cal. Bank* v. *Mahoney Mining Co.,* 5 Sawy. 255, Fed. Cas. No. 392, 2 Pac. C. L. J. 128 (U. S. Cir. Ct.); *Mace* v. *O'Reilley,* 70 Cal. 231 [11 Pac. 721].)"

[8] It is well settled that the sovereign power which creates a public office may abolish it or change the tenure thereof even though the tenure of an incumbent is affected thereby, unless restricted by the constitution. Such offices are not held by contract or grant. (*Miller* v. *Kister,* 68 Cal. 142 [8 Pac. 813]. If the office be a constitutional office, as in the instant case, the constitutional power which created it may likewise, in the exercise of its sovereign power, abolish it. Every person who accepts an office does so with that implied understanding.

The office of judge *pro tempore* was made available to litigants by conforming to a prescribed procedure as a part of the judicial system of the state. The law was remedial in its operation. Persons who desired to avail themselves of the method of trying cases under the form provided by law were permitted to do so with the understanding that the sovereign power reserved to itself the right to amend or repeal the law at will in the interest of the general welfare.

The hardship and inconvenience which respondent may suffer by the unfortunate intervening circumstance of the instant case, while regrettable, are but incidents to the administration of the law under our system of government.

The office of judge *pro tempore* in the instant case having been abolished before the completion of the trial of the cause which he had been authorized to try and determine, he is, therefore, divested of jurisdiction to further proceed in the trial and determination thereof.

The peremptory writ will, therefore, issue.

Shenk, J., Richards, J., Waste, C. J., Curtis, J., Preston, J., and Langdon, J., concurred.