[Civ. No. 7970. Third Dist. Dec. 1, 1951.]

LAWRENCE L. PICKENS et al., Respondents, v. FRED C. JOHNSON et al., Appellants.

FRED C. JOHNSON et al., Appellants, v. LAWRENCE L. PICKENS et al., Respondents.

McAllister & Johnson and Walter C. Frame for Appellants.

Floyd H. Bowers for Respondents.

SCHOTTKY, J. pro tem.—This is an appeal from the judgments in two cases, consolidated for trial, the first brought by respondents for declaratory relief and the second brought by appellants for forcible entry.

In the complaint for declaratory relief it is alleged that the Pickenses, being owners of premises known as the Hawaiian Hut, leased the same to the Johnsons; that the lease contained a provision that the lessee would not permit any liens to be filed against the premises because of any contract of any nature made by the lessee and third parties; that the lease further provided that upon default in any covenant, the lessor might reenter; that at the time of making the lease the parties entered into an agreement to sell the "Business and Liquor License," under which the Pickenses agreed to sell the Johnsons the business, fixtures and liquor license, title to remain in the seller until the purchase price was fully paid; that the lease provided that a default in the lease should be a default in the contract of sale; that possession, operation and control of all property mentioned in the two instruments was delivered to the Johnsons on January 5, 1948, who retained exclusive possession together with the profits thereof until September 14, 1949; it is alleged upon information and belief that prior to September 14, 1949, the Johnsons incurred obligations for merchandise in

the operation of the Hawaiian Hut in excess of $3,000; that in an action against the Hawaiian Hut, a copartnership, alleged to consist of the Pickenses and the Johnsons, an attachment was issued pursuant to which the marshal levied upon and took possession of the leased premises and property; that the Johnsons thereupon abandoned the premises and refused to satisfy the attachment lien; that the Pickenses were informed by the State Board of Equalization that unless the Hawaiian Hut was opened and operated the liquor license would be revoked; that the Pickenses, on September 20, 1949, took possession of the Hawaiian Hut; that the Johnsons have since refused to sign the documents necessary to transfer the liquor license, and have served a written demand upon plaintiffs for the return of possession of the premises; that an actual controversy exists between the parties as to their rights under the lease and the contract to sell. The prayer is for a declaration of rights under the two instruments, a decree ordering the Johnsons to transfer the liquor license to the Pickenses, a judgment quieting the Pickenses' title in and to the realty, and attorney's fees in the amount of $500. The answer contains denials that the Pickenses own the liquor license, that the Johnsons breached the lease and abandoned the premises, that the Board of Equalization threatened to revoke the liquor license.

In the complaint in the second action it is alleged that the Johnsons were in possession of the Hawaiian Hut from January 5, 1948, to September 20, 1949; that the monthly value of the use of the property was in excess of $1,000; that on September 20, 1949, while the Johnsons were still in possession, and during their temporary absence, the Pickenses forcibly entered upon said premises, and unlawfully took possession thereof; that the Johnsons have made a written demand on the Pickenses for surrender of the premises, but the latter have refused so to do. The prayer is for restoration of the premises and damages in the amount of $39,000. The answer sets up as affirmative defenses the matters alleged in the complaint in the first action.

The two actions were consolidated and tried without a jury. In the first action the court found that the Pickenses are the owners of the realty, the fixtures, the business and the liquor license; that the Johnsons violated the express obligations of the lease and contract of sale by incurring obligations for merchandise in the operation of the business on the credit of the Pickenses in an amount in excess of $800; that when the marshal attached the Hawaiian Hut, the John-

sons repudiated their obligations, abandoned the premises, and refused to satisfy the attachment lien; that the Pickenses were informed by the Board of Equalization that the liquor license would be revoked if they did not open and conduct the business of the Hawaiian Hut; that on September 14, 1949, the Pickenses gave written notice to the Johnsons to perform under the lease or quit possession; that following the notices the Johnsons did not release the attachment or retake possession; that because of this the Pickenses, on September 20, 1949, reentered possession of the premises as they were entitled to do; that the Johnsons refuse to sign the papers necessary to transfer the liquor license, to which transfer the Pickenses are entitled. The court concluded that the contract of sale should be decreed cancelled; that the lease be adjudged null and void; that the Johnsons should be ordered to transfer the liquor license to the Pickenses; that the Pickenses should be given judgment for $250 for attorney's fees. Judgment was entered accordingly.

In the second action the court found that the Pickenses did not unlawfully enter into possession of the Hawaiian Hut but that the Johnsons abandoned the premises; that the Johnsons have no interest in the premises or the possession thereof, and are estopped, by reason of their abandonment, to claim any right or title thereto. The court concluded that the Johnsons were entitled to take nothing by their action. Judgment was entered accordingly. The Johnsons have appealed from both judgments. In view of the fact that the Johnsons are defendants in the declaratory relief action and plaintiffs in the forcible entry action, we shall refer to appellants in both actions as the Johnsons and to respondents in both actions as the Pickenses.

As grounds for a reversal of the judgments the Johnsons make the following contentions: 1. The findings are not supported by the evidence; 2. The uncontradicted evidence clearly establishes that there was no breach of the terms of the lease by the appellants; 3. Appellants did not abandon the premises; and 4. The evidence establishes the right of the appellants to recover damages for forcible entry. Before discussing these contentions we shall summarize briefly the evidence as shown by the record.

The lease and contract of sale were both executed on January 5, 1948. The following provisions of the lease are pertinent here:

"That if any rent shall be due and unpaid, or a default

shall be made in any of the covenants herein contained, the Lessor or Lessor's representative or agent may re-enter said premises and remove all persons therefrom, whereupon such default in the performance of this Lease shall be construed to be a default in the contract of sale wherein the Lessor has concurrently herewith sold to the Lessee the business equipment and fixtures and liquor license issued to the Hawaiian Hut, operated upon said premises, and shall be a default in the contract of sale between the Lessor and the Lessee wherein the Lessor has sold to the Lessee the stock of goods, wares and merchandise upon said premises, which said last mentioned contract was also executed on this day concurrently with this lease; and upon such default, the Lessor may take such action as Lessor deems necessary to declare each default in each of said contracts, and the Lessor's remedies under such contracts shall be cumulative.

. . . . . . . . . . . . . . . .

"(3) That the Lessee shall personally occupy said demised premises. . . .

. . . . . . . . . . . . . . . .

"(16) Lessee agrees not to permit any liens to be filed against said premises because of any contract of any nature made by the Lessee and third parties, and further agrees to save the lessor harmless from any action at law or otherwise, because of the injuries to persons or property resulting directly or indirectly from the use and occupancy of the premises by the Lessee."

The contract of sale contains the following pertinent provisions:

"1. . . . the Buyer agrees to purchase from the Seller, that certain tavern, cafe and business known as the HAWAIIAN HUT, . . . together with the equipment therein, . . . ; together with an On Sale General Liquor License, issued to the Seller by the State of California for use within said premises. . . .

"2. It is understood and agreed that the title to said property shall remain in the Seller until the purchase price herein specified shall have been fully paid, together with accrued interest thereon; and in the event of the failure of the Buyer to make the payments at the time and in the manner herein specified, the Seller shall be relieved of all obligation in law or in equity to convey said property to the Buyer and the amounts paid by the Buyer at the time of default shall be

construed as rental for the use of the property, and shall belong to the Seller.

.   .   .   .   .   .   .   .   .   .   .   .   .

"5. It Is Further Understood and Agreed that in the event the Buyer fails or refuses to make the payments as herein specified, that the Buyer shall upon such default forthwith sign such applications and documents as may be necessary or required to transfer the liquor license issued for use upon said premises to the Seller; and in the event the Buyer shall fail or refuse to do so, upon such default, then and in that event the Superior Court of the State of California in and for the County of Sacramento, may designate the Clerk of the Court as its agent for the specific performance of this clause of this contract."

The Johnsons were in possession of the Hawaiian Hut until September 14, 1949, when Stephen Marietta, Marshal of the Municipal Court, posted notices of attachment on the premises and placed padlocks on the doors. The Johnsons were not physically present on that date, however, but had their bartender, Hunter, on duty at the Hut. Hunter continued to occupy the sleeping quarters, and operated the bar on the 15th, under the direction of the marshal. He did not operate the bar the following day, and he left the premises on the 19th, and when he returned on the 20th a new padlock was on the door to his sleeping quarters. Mrs. Pickens, who was on the premises, unlocked the door for him and permitted him to remove his clothing and other personal possessions. The Pickenses had entered the Hut on the 20th, removing the locks placed there by the marshal. On the 14th they had posted a notice on the premises giving the Johnsons until the 18th to fulfill their obligations under the lease, but they were unable to personally contact the Johnsons. Notice was mailed to the Johnsons, however, and their attorney was contacted. The notice was admitted as Plaintiffs' Exhibit 3. After reentering the premises, the Pickenses began immediately to redecorate and remodel the place. On October 10th Mrs. Johnson appeared and tendered the rental due for the following month, which was refused. Rent had been paid up through the 10th of October, and payment on the sale of the business fixtures, etc., was not due until February. The evidence is in conflict as to whether the Johnsons made any demands for return of possession during the month of October. Around the middle of October, Mrs. Johnson had taken a truck out to the Hut to remove her belongings

and liquor, although she testified that she did not remove *all* her things. Prior to September 14th, Mrs. Johnson had moved into town in order to send her children to school. Prior to September 14th Mr. Johnson had discussed with several persons his desire to go to Arabia to work for an oil company, although Johnson testified that he had thought he could make the trip so long as he kept the business going, and that he did not contemplate abandoning the lease. The attachment arose out of a suit by W. H. Sneed against both the Johnsons and the Pickenses for liquor sold on an open book account, the amount sued for being $830.72. The attachment was upon the goods, wares and merchandise of the business. The Pickenses, in contempt proceedings arising out of the attachment, on December 8, 1949, were adjudged not guilty of contempt. Sneed's attorney released the attachment at some time subsequent to September 20th. H. E. Johnson, of the Board of Equalization, testified that the Hut was four months delinquent in sales taxes, as of September, 1949; that sales taxes were supposed to be paid every month; that he saw Mrs. Pickens and told her that the taxes due would have to be paid before the Hut could be reopened. Pickens was not permitted to testify as to his conversations with a person from the Board of Equalization pertaining to the liquor license, but in an affidavit answering the charge of contempt, admitted as Defendant's Exhibit A, Pickens stated that on September 20, 1949, he was informed by Mr. Smith, District Agent for the State Board of Equalization at Sacramento, that the liquor license would be cancelled unless the business was reopened within 10 days from the date it closed. While the Johnsons never paid the debt for which the attachment was levied, they had arranged to borrow the money necessary to do so from Mrs. Johnson's sister, who backed out of the deal when she learned that the Pickenses were in possession. On October 23d the Johnsons served notice on the Pickenses to deliver immediate possession of the Hut. Other material facts will be hereinafter set forth.

### The Declaratory Relief Action

Appellants make a forceful attack on the findings in said action. They first attack the finding that "defendants [the Johnsons] wilfully incurred obligations for merchandise in said business . . . in the name of and on the credit of the plaintiffs [the Pickenses] in an amount in excess of Eight Hundred ($800.00) Dollars" as being unsupported by the record, and we must agree with this contention. The only

evidence in the record as to this point is that an action was brought against appellants and respondents for that amount, but there is no evidence that said obligation was incurred by appellants in the name of or on the credit of respondents. The fact that the liquor license was being purchased by appellants from respondents on a conditional sales contract may have been a reason why respondents were joined in action for liquor sold to appellants, but where said action did not proceed to judgment against respondents, the mere filing of such an action is not sufficient to support a finding that appellants incurred said obligation on the credit of respondents.

Appellants also attack the findings that they repudiated their obligations under the lease and agreement of sale and abandoned the premises. In view of the fact that the question of abandonment is the principal question involved upon this appeal as to both actions we shall discuss it in more detail hereinafter.

Appellants also attack the finding that the respondents were informed by the Board of Equalization that the liquor license would be revoked unless the respondents opened up the business. We find no evidence in the record to support this finding, but even if it were supported, it would be difficult to understand how such a statement by an employee of the board could affect the rights of appellants under the lease and agreement.

### The Forcible Entry Action

Appellants attack the findings in this action that (1) it is not true that respondents forcibly entered the premises while appellants were in peaceable possession thereof; (2) it is not true that respondents have detained the property from appellants; (3) that appellants abandoned the property, and respondents, in order to protect their interest, took possession.

It requires little argument to show that respondents forcibly entered the premises while appellants were in possession. Appellants' rent was paid to October 5, 1949; the marshal had placed a padlock on the door of the premises, and on September 20, 1949, respondents broke said padlock and entered and took possession of the premises and started redecorating and remodeling. In *Rutledge* v. *Barger,* 82 Cal.App. 356 [255 P. 537], it was held that breaking a lock in order to enter a building proves the force necessary to establish forcible entry. See, also, *Saferian* v. *Baer,* 105 Cal.App. 238 [287 P. 142]. In *Calidino Hotel Co.* v. *Bank of America,* 31 Cal.App.

2d 295 [87 P.2d 923], it was held that in an action for forcible entry the plaintiff need only prove, in addition to the forcible entry, that at the time of the entry he was peaceably in the actual possession of the property entered; that a provision providing for reentry upon default by the lessee is not a defense to an action for forcible entry. The court said at page 307:

"The authorities amply support the rule that where a right to take possession is given to a mortgagee in a mortgage or is reserved to a seller in a contract of sale or to a lessor in a lease, such right to possession may be exercised only where it can be exercised peaceably and without force or violence. If such right cannot be exercised without force or violence, the possessor of such right must resort to a court of law."

It is apparent that the judgments in favor of respondents must be sustained, if at all, upon the basis that the court's findings in both actions that appellants repudiated and forfeited their obligations under the lease and agreement of sale and abandoned the premises are supported by the record.

The real property in question was leased by respondents to appellants for a term of five years from January 5, 1948, at a monthly rental of $225 per month, payable on the 10th day of each month. The business, equipment and liquor license were sold by respondents to appellant for $10,000 upon a conditional sales contract, $5,000 being the down payment, and $500 plus interest at the rate of 5 per cent, being payable on August 1, 1948, February 1, 1949, and on February 1st and August 1st of each year thereafter. On September 14, 1949, the day the attachment was levied, the rent was paid to October 5, 1949, two payments of $500 had been paid on the contract, and no payment was due thereon until February 1, 1950.

The attachment, according to a stipulation appearing in the record, was upon the goods, wares and merchandise, and not upon the real property, so the contention of respondents that appellants were guilty of a violation of the provision of the lease that "the lessee agrees not to permit any liens to be filed against said premises because of any contract made by Lessee and third parties" is without merit. An attachment against the goods, wares and merchandise located on the premises for an obligation of the lessee cannot be considered a lien filed against the premises of the lessors.

Respondents contend that abandonment by appellants was proved by their acts and conduct as hereinbefore set forth.

They assert that there was evidence that appellant Fred Johnson had told some people that he was going to Arabia; that appellant Mrs. Johnson moved off of the premises in August; that after seeing a copy of respondents' notice to perform or quit, appellants abandoned the premises; that appellants never offered to resume the business, and did not demand possession of the premises until October 23d; and also that in October appellants removed all of their property from the premises except a stove and a refrigerator.

Appellants argue that the record shows clearly that there is no basis for a finding of abandonment. They point out that appellants were not in default under the lease; that their rent was paid to October 5th; that they were in possession, conducting the business when the place was padlocked by the marshal; that on September 20th, while the marshal's padlocks were still on the property, respondents broke the locks, entered the premises and began redecorating and remodeling; that the rent for the month of October was tendered to respondents on October 10th and the rent for November on November 10th, but both tenders were refused by respondents.

We are convinced that the court's findings that appellants repudiated their obligations and forfeited their rights under the lease, and that they abandoned the premises, are unsupported by the record.

The general rule as to abandonment is well stated in 1 American Jurisprudence, sections 8, 9, pages 6-7:

Section 8. "The primary elements of abandonment are the intention to abandon and the external act by which the intention is carried into effect. The intention to abandon is considered the first and paramount inquiry..

"Abandonment may arise from a single act or from a series of acts. Time is not an essential element of abandonment, and is of no importance except as indicative of intention."

Section 9. "The abandonment of property necessarily involves an act by which the possession is relinquished, and this must be a clear and unmistakable affirmative act indicating a purpose to repudiate the ownership; the mere relinquishment of the possession of a thing is not an abandonment of it in the legal sense of the word, for such an act is not wholly inconsistent with the idea of continuing ownership. Abandonment consists of two elements—act and intention. The act of relinquishment of possession or enjoyment must be accompanied by an intent to part permanently with the right to the thing; otherwise there is no abandonment. . . ."

And in 51 Corpus Juris Secundum, section 125, pages 718-719, it is stated:

"In order to constitute an abandonment or surrender of the premises, which on acceptance by the landlord will constitute a surrender of the lease by operation of law, there must be such a relinquishment by the tenant as will justify an immediate resumption of possession by the landlord, and, where there is such a relinquishment, there is a sufficient abandonment or surrender. Although it has been said that the lessee of a term may abandon the lease by words or equivalent acts, a surrender cannot be implied by operation of law when the tenant retains possession, as tenant, of the leased premises, or any material portion of them.

". . . Likewise, there is no surrender by the lessee . . . where he surrenders the key on demand of a sheriff attaching his personal property; . . ."

While abandonment is a matter of intent which may be proved by the acts and conduct of the party who is alleged to have abandoned the property in controversy, a finding of abandonment must be based upon evidence from which an inference of abandonment can reasonably be drawn.

Where, as in the instant case, appellants had paid $6,000 on the total of $10,000 purchase price of the business, equipment and liquor license, leaving a balance of only $4,000, and there was no payment due on said purchase price for nearly five months; where, according to the testimony of respondents the liquor license itself was worth at least $7,500; where the rental on the leased premises was paid to October 5, 1949 (15 days after respondents broke the locks on the door and took possession of the premises); and where the appellants tendered the rent for the month of October, it must be held that the evidence shows affirmatively that there was no abandonment by appellants.

As to the findings in the declaratory relief action that appellants violated the express obligations of the lease and contract of sale by incurring obligations for merchandise upon the credit of respondents, we have already pointed out that this finding is not sustained by the evidence, and that, even if true, it could not be considered a breach of any provision of the lease or agreement; and the same may be said as to the findings that appellants refused to satisfy the attachment lien on the personal property and that respondents were informed by the Board of Equalization that the liquor license would be revoked if they did not open and conduct the business of the

Hawaiian Hut. We, therefore, conclude that the findings of the court in the declaratory relief action, upon which the court based its conclusions that the contract of sale and lease should be cancelled and the appellants ordered to transfer the liquor license to respondents, lack substantial support in the record.

The rights of a lessee under a lease and of a vendee under an agreement of sale cannot be taken away by the method pursued by respondents in the instant case. The law provides and encourages a legal and orderly method of procedure if the right to terminate such rights exists. Respondents were not justified in breaking the locks on the leased premises, and in taking possession of said premises and business and excluding appellants therefrom. Appellants had been paying the rent for more than 18 months and had paid three-fifths of the purchase price, and the evidence in the instant case is insufficient to support the judgments that they had forfeited their rights under the lease and their payments under the contract of sale.

In view of the foregoing the judgments appealed from are reversed.

Adams, P. J., and Van Dyke, J., concurred.