[Sac. No. 6378. In Bank. Mar. 1, 1954.]

LAWRENCE L. PICKENS et al., Appellants, v. FRED C. JOHNSON et al., Respondents.

FRED C. JOHNSON et al., Respondents, v. LAWRENCE L. PICKENS et al., Appellants.

F. H. Bowers and Thomas F. Sargent for Appellants.

McAllister & Johnson and Walter C. Frame for Respondents.

SHENK, J.—This is an appeal from judgments in favor of the Johnsons, husband and wife, for $4,500 and $15,400, respectively, in actions consolidated for trial and on appeal.

The Pickens, husband and wife, commenced an action in Sacramento County, for declaratory relief involving their rights under a lease from the Pickens to the Johnsons of premises owned by the Pickens. Their rights under a con-

tract of conditional sale of the business and equipment on the premises leased by the Pickens from the Johnsons were also involved. The Johnsons brought an action in the same court against the Pickens for damages for the forcible entry and unlawful detainer of the premises. The actions were consolidated for trial and tried without a jury.

Before approaching the merits of the appeal a preliminary constitutional question raised by the Pickens must be disposed of.

The cases were tried before the Honorable J. O. Moncur who was elected in 1944 as judge of the Superior Court of Plumas County for the full term of six years. He discharged the duties of that office until the last day of his term (Jan. 8, 1951) when he retired pursuant to the provisions of the Judges' Retirement Act (Stats. 1937, p. 2204). At the time this consolidated action was tried Judge Moncur was sitting in the Superior Court of Sacramento County pursuant to an assignment to that task by the chairman of the Judicial Council as provided in section 6 of the act as amended in 1951. (Stats. 1951, p. 3694.) At the time of the assignment that section provided, and still provides, in its pertinent parts as follows:

"Sec. 6. Justices and judges retired under the provisions of this act, so long as they are entitled by its provisions to receive a retirement allowance, shall be judicial officers of the State, but shall not exercise any of the powers of a justice or judge except while under assignment to a court as hereinafter provided. Any such retired justice or judge may, with his own consent, be assigned by the Chairman of the Judicial Council in a court of like jurisdiction as, or higher jurisdiction than, that court from which he has retired; and while so assigned shall have all the powers of a justice or judge thereof. If assigned to sit in a court, he shall be paid while sitting therein in addition to his retirement allowances the difference, if any, between his retirement allowance and the compensation of a judge of the court to which he is assigned."

It is the contention of the Pickens that the foregoing section of the Judges' Retirement Act is unconstitutional and that any judgment rendered by Judge Moncur while under assignment is void.

As authority for the adoption of the Judges' Retirement Act and particularly section 6 as amended in 1951, reliance is placed on section 22a of article IV of the Constitution

adopted in 1930. The pertinent parts of that section are as follows: "The Legislature shall have power to provide for the payment of retirement salaries to employees of the State who shall qualify therefor by service in the work of the State as provided by law. The Legislature shall have power to fix and from time to time change the requirements and conditions for retirement which shall include a minimum period of service, a minimum attained age and minimum contribution of funds by such employees and such other conditions as the Legislature may prescribe. . . ."

Under the authority of the foregoing constitutional section the Legislature in 1931 enacted the statute establishing a system for the retirement of the employees of the state (Stats. 1931, p. 1442) and it has been in continuous operation since that time.

In 1948 the question was presented to this court whether section 22a of article IV of the Constitution conferred upon the Legislature the power to provide a retirement system for its own members. It was held in the case of *Knight* v. *Board of Administration of State Emp. R. System,* 32 Cal.2d 400 [186 P.2d 547, 5 A.L.R.2d 410], that section 22a was an enabling act; that the term "employees" included officers of the state; that members of the Legislature were officers of the state, and that under the section the Legislature was authorized to establish a retirement system for its members as provided for in the Legislators' Retirement Law of 1947. (Gov. Code, § 9350 et seq.; Stats. 1947, p. 2058.) The validity of that statute was upheld by unanimous decision of this court.

There can be no doubt that section 22a as construed in the Knight case was and is an enabling provision of the Constitution authorizing the Legislature to provide a system for the retirement of the members of the judicial department of the state embraced within the Judges' Retirement Law. In fact, there is here no contention to the contrary. That act, as stated, was adopted in 1937. Section 6 was then in its present form with the exception of a provision added by amendment in 1951. The section was first amended in 1941 (Stats. 1941, p. 2938) to provide that there must be a stipulation in the case by all counsel that the retired judge could act. In 1951 the section was again amended by unanimous vote of both houses of the Legislature. (Assembly Daily Journal, May 18, 1951, p. 4501; Senate Daily Journal, June 16, 1951, p. 3462.) By that amendment the require-

ment of a stipulation of counsel was eliminated and a provision added for compensation to the retired judge while under assignment based on the difference between his retirement allowance and the compensation of a judge of the court to which he is assigned. (Stats. 1951, p. 3694.)

For a period of 15 years and over, and until the judgment in this case in August, 1952, the system of assignment of retired judges to try cases in the superior court has been in operation without objection.

Thus, at all times since the enactment of the Judges' Retirement Act in 1937 section 6 thereof has contained the provision that a retired judge should be a judicial officer of the state and also the provision granting to the Legislature power "from time to time" to "change the requirements and conditions for retirement." This the Legislature has done in the two instances mentioned and the question is whether the conditions in the original enactment and those subsequently incorporated in it were within the power of the Legislature to enact. If it be concluded that they bear a reasonable relation to a system of retirement of judges and do not offend any provision of the Constitution they should be upheld. It is our conclusion that they are valid from both standpoints.

This type of legislation, both constitutional and statutory, is not new in this state. The Public Utilities Commission has been established under a constitutional enabling act with full power conferred on the Legislature to enact legislation even contrary to any other provisions of the Constitution, provided it be cognate and germane to the regulation and control of public utilities. (Const., art. XII, § 22; *Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640 [137 P. 1119, Ann. Cas. 1915C 822, 50 L.R.A.N.S. 652].) Likewise the Industrial Accident Commission has been set up under an enabling act whereby the Legislature is expressly vested with plenary power "unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation. . . ." (Const., art. XX, § 21; *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407 [156 P. 491, Ann.Cas. 1917E 390].)

Under the foregoing enabling acts the Legislature has enacted laws which, as interpreted by the courts, are controlling, as to the subjects properly legislated upon, over other general provisions of the Constitution and general laws.

So here the Constitution has in general terms conferred

upon the Legislature the power to establish a system for the retirement of judges. The Legislature has done so and has imposed as a condition of retirement that retired judges, so long as they receive retirement allowances, shall continue to be judicial officers of the state and with their permission shall be subject to call for judicial service by assignment for that purpose by the chairman of the Judicial Council.

It would seem to be beyond question that the provision for the assignment and service of a retired judge in accordance with the statute bears a reasonable relationship to a system of judges' retirement. It is inherently connected with the problems of the administration of justice under which the state, in consideration for the retirement allowance, may invoke the assistance of the retired personnel of the judicial department in emergencies found to exist by the chairman of the Judicial Council. Nothing foreign to that purpose could have been in contemplation by the Legislature.

It is recognized that the constitutional grant of power to the Legislature to establish the two commissions above referred to is much more comprehensive than that contained in section 22a of article IV, and it is taken for granted that any legislation adopted under the authority of that section must not be inconsistent with other provisions of the Constitution.

There is no provision of the Constitution which would prohibit the Legislature from providing, as it has in section 6, that so long as he receives a retirement allowance a retired judge shall be a judicial officer of the state. Section 1 of article VI which provides that the judicial power of the state shall be vested in the senate, sitting as a court of impeachment, and in the several courts, including the superior court, deals with the question of the official entities in which the judicial power of the state shall be vested and not with the personnel of those institutions. And it must be assumed that an assigned retired superior court judge is possessed of all of the qualifications otherwise acquired for service on that court, including the requirement of section 23 of article VI of the Constitution that he shall have been admitted to practice in this state for at least five years before becoming a superior court judge.

With that assumption it is observed that here we are dealing with the status of a superior court judge who has retired pursuant to the provisions of the statute. In order to retire he must, while in office, file his notice of retirement with the Secretary of State as provided by section 1 of the

act. (Stats. 1937, p. 2204.) While in retirement he has the privilege of maintaining his membership in the State Bar of California. As such he is entitled to all of the privileges and immunities and is subject to the duties and obligations of an attorney at law so long as he maintains his membership in the State Bar organization. His term of office as a judge has expired, or been terminated prior thereto by his voluntary act, and the office is vacant. He may go and come in all respects as any attorney and counselor at law but he has no power as a judicial officer until the happening of a contingency, namely, his assignment and voluntary acceptance thereof as a judge of the superior court in and for a designated county by the chairman of the Judicial Council. That assignment does not prolong his term of office. It merely has the effect of vesting in him the powers of a judge of the superior court during the period specified in the assignment, as is ordinarily done in the case of an assignment by the chairman of the Judicial Council of an incumbent superior court judge from one county to another under the authority of section 1a of article VI of the Constitution. It must be taken for granted that under the proper exercise of the power of assignment a retired judge will not be continued in service indefinitely. The term of assignment is necessarily within the wise discretion of the chairman of the Judicial Council. Upon the expiration of the period of his assignment the judge resumes his prior status as a retired judge. If he desires to exercise the privileges of an attorney during his retirement and while unassigned, he would, of course, be subject to the provisions of the State Bar Act, including the requirement of the payment of dues.

 It is also observed that section 6 of the Judges' Retirement Act does not offend any provision of the Constitution on the ground that an assignment thereunder is an unlawful increase in the number of judges of the county to which the retired judge is assigned. The Constitution does not limit the number of superior court judges in any county. The Legislature has full control of the number (two-thirds in both houses voting in favor thereof, § 9, art. VI) and section 6 of the retirement act is legislative authority for additional sessions of court for the particular county to which the assignment is made (§§ 6 and 9, art. VI).

 Again, the increase in compensation provided for in

section 6 of the act to be paid to retired judges while under assignment is not inconsistent with any provision of the Constitution. The compensation to be paid to superior court judges is for the Legislature to determine under section 17 of article VI of the Constitution.

Section 8 of article VI, providing that the term of office of a superior court judge shall be six years, and cases such as *Martello* v. *Superior Court*, 202 Cal. 400 [261 P. 476], holding that a judicial officer may not perform a valid judicial act after his term has expired, do not set at nought the obvious purpose of the assignment provisions of the Judges' Retirement Act. In no proper sense is the term of a judge extended by his retirement or by his assignment. Upon his retirement he can no longer of his own volition assume to act as a judge whether he retires at the end of his term, as in this case, or in his midterm. It is only upon his assignment in accordance with a statute as authorized by the Constitution that he has any judicial power whatsoever, and since it is correct to say that the assignment has a reasonable relationship to the system of retirement with no rights in the retired judge to act except under the assignment, there has been no unlawful extension of his term of office.

The fact that under section 6 of the act the retired judge while receiving retirement allowance is declared to be a judicial officer of the state (but without any power as such except while under assignment) should be considered as nothing more than making him eligible for assignment. It would be unreasonable to conclude that while not under assignment he would be subject to the conditions that attach to the status and activities of an incumbent judge. When assigned he voluntarily assumes the status of a regular judge and would necessarily be governed by those conditions. For example, when under assignment he could not practice law (Const., art. VI, § 18), and could not be absent from the state longer than 60 days (Const., art. VI, § 9). Others could be noted. While not under assignment there is no good reason to say that he would be subject to the provisions of the Constitution and law of the state made specially applicable to regular incumbent judges.

As hereinbefore indicated there was no provision in the original Judges' Retirement Act of 1937 requiring a stipulation of counsel that the assigned retired judge might act.

(Stats. 1937, p. 2206.) In 1941 section 6 of the act was amended to provide that, ''Any such retired justice or judge may, with his own consent, and upon the stipulation of all the counsel in the case or cases to which he is assigned to sit, be assigned by the chairman of the Judicial Council to sit in any court; and while so assigned shall have all the powers of a justice or judge thereof.'' (Stats. 1941, p. 2938.) In 1951 this section was again amended by eliminating the requirement of a stipulation of counsel before the order of assignment could be made. (Stats. 1951, p. 3694.)

It is again emphasized that we are here dealing with the assignment of a retired judge of the superior court to sit in a superior court. Such being the case it is urged that, notwithstanding the amendment of section 6 in 1951, dispensing with the requirement of a stipulation of counsel, nevertheless such a stipulation as to the assignment of a superior court judge is required under the provisions of section 5 of article VI of the Constitution as amended in 1928. The amendment added in that year is as follows: ''Upon stipulation of the parties litigant or their attorneys of record a cause in the superior court or in a municipal court may be tried by a judge pro tempore who must be a member of the bar sworn to try the cause, and who shall be empowered to act in such capacity in the cause tried before him until the final determination thereof. The selection of such judge pro tempore shall be subject to the approval and order of the court in which said cause is pending and shall also be subject to such regulations and orders as may be prescribed by the Judicial Council.''

It is argued that since section 22 of article I of the Constitution provides that: ''The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise,'' there is no power in the Legislature to provide for the assignment of a retired superior court judge to act as a judge of such a court except by stipulation of counsel, accompanied by an order of the superior court approving the selection.

A sufficient answer to this argument is that the Constitution and the statute do not encompass the same subject matter and that there is no conflict between them. Section 5 of article VI of the Constitution, by its own terms, has to do only with the establishment of a court through the medium of a pro tempore judge, selected from the membership of

the bar by stipulation of counsel to try a particular case, and whose selection must be approved by the superior court. The chairman of the Judicial Council has nothing to do with setting up such a court. On the other hand section 6 of the Judges' Retirement Act operates to establish a court through the medium of a judicial officer of the state and his assignment thereto by the chairman of the Judicial Council. Where duly assigned under that section such officer obviously is not a judge pro tempore selected by stipulation of counsel to try a particular case as contemplated by section 5 of article VI of the Constitution. The latter section operates independently of the retirement act. Neither controls the other. When a retired judge is duly assigned under the retirement act he is a regular judge of the superior court whose status as such is created by the Legislature pursuant to constitutional authority. Section 5 of article VI is therefore not controlling. It necessarily follows that under the retirement statute no stipulation of counsel is required as a prerequisite to the assignment of a retired superior court judge to preside as a judge of the superior court in any county in the state.

It may not be assumed that the power of assignment conferred by section 6 of the statute will be improvidently exercised. If perchance it should be the Legislature has complete authority to deal with the subject by appropriate legislation even to the extent of withdrawing the power altogether.

▮ By section 1a of article VI (subd. 6) of the Constitution the duty is enjoined upon the chairman of the Judicial Council to seek to expedite the judicial business of the state, to equalize the work of the judges, and to provide for the assignment of incumbent judges from one county to another under certain conditions. None of the conditions specified in that section would prohibit the assignment here under consideration.

▮ Whether as a matter of policy the system of assignment of retired judges should be put into effect is for the people of the state to determine through the Constitution or by the Legislature. That policy has been declared by both, by the Constitution by reasonable implication and by the Legislature in the unmistakable and definite terms of section 6 of the retirement act. The public policy so reflected is of considerable public concern. It is not a matter which is subject to judicial control where it has been plainly declared by legislative authority. A plan for the continued service

of federal judges has been in effect for many years. (28 U.S.C.A. § 294 [formerly § 375a]; *Booth* v. *United States*, 291 U.S. 339 [54 S.Ct. 379, 78 L.Ed. 836]; *United States* v. *Moore*, 101 F.2d 56, cert.den., 306 U.S. 664 [59 S.Ct. 788, 83 L.Ed. 1060].) The purpose of such a plan would seem to be to make available to the judicial department the experience, aptitude and capabilities of retired judges who, with their consent, may be called upon for assistance in the administration of justice. Such a plan is highly desirable not only in particular cases but also when congestion in judicial business in a particular locality has become critical, and oftentimes intolerable.

The chairman of the Judicial Council is the logical constitutional officer in whom to vest the power of assignment. It is one of his functions to marshal the judicial manpower of the state by assignment and transfer of judges to facilitate the dispatch of judicial business. No other person is in better or as good a position as he to determine the desirability and need for such assistance.

From the foregoing it is concluded that while the trial judge in these cases was acting under the assignment he was acting as a judge de jure. There is no question but that if he were not, the status of a judge de facto attached to his action. The office to which he was assigned was a de jure office. By acting under regular assignment under a statute authorizing it he was acting under color of authority as provided by law. His conduct in trying the cases and rendering judgment therein cannot here be questioned. (*People* v. *Kempley*, 205 Cal. 441 [271 P. 478], and cases there cited.) But the fact that those judgments may not be attacked for disqualification of the trial judge because he acted at least as a judge de facto is not enough. The question whether he acted as a de jure judge is essential to the proper disposition of this case especially for the proper functioning of the retirement system and the regularity of the action of assigned judges thereunder.

Since it is determined that the judgments herein may not be assailed on the ground that the trial judge was without power to act under the assignment, we turn to the merits of the appeal. From the record it appears that the Pickens were the owners of a business (including an on-sale liquor license) and equipment and the property on which it was located. In 1948, the parties made a conditional contract

of sale in which the Pickens were the sellers of the business and personal property used therewith for the sum of $10,000 to be paid in stated installments, and of which $5,000 was paid. At the same time, the Pickens leased by written lease the real property on which the business was located for a five-year term commencing January 5, 1948, at a monthly rental of $225, the first and last month of which were paid in advance. The Johnsons took possession of the property under the agreements and they retained possession until September 20, 1949.

In the course of operating the business, the Johnsons incurred obligations to third persons for which an action was commenced against them in the municipal court. An attachment was issued in that action against "goods, wares and merchandise" of the Johnsons located on the leased property. On September 14, 1949, the marshal levied the attachment on such "goods, wares and merchandise" by posting notice on the premises where located and padlocking the doors of the building. Hunter, an employee of the Johnsons, was then in charge of the business. He operated the bar at the business on September 15th under the marshal's direction. He left the premises on September 19th and when he returned on the 20th, the marshal's padlocks had been replaced by other padlocks, and the Pickens were in possession, having entered on that day, removing the marshal's padlocks. At that time, all sums payable under the lease and agreement had been paid by the Johnsons according to the instruments. The rent had been paid to and including October 10, 1949, and on that date the Johnsons' tender of the rent for the ensuing month was refused by the Pickens. Other factors show that the Pickens asserted and held possession of the premises to the exclusion of the Johnsons.

In the first of the two consolidated actions, the Pickens', plaintiffs', basic claims were that the Johnsons had violated the lease by suffering the attachment to be levied and incurring the obligations on which the attachment was based in their name and on their credit; that hence the lease was breached and it and the agreement were no longer in effect and they were entitled to regain possession of the premises and business. In the second action, the Johnsons, plaintiffs, claimed damages from the Pickens for ousting and excluding them from possession of the premises and business, asserting no breach

of the lease or agreement and resting their claim on those instruments.

The court found that there had been no breach of the lease or agreement; that the merchandise was not bought in the Pickens' name or on their credit; that the levy of the attachment did not breach the lease; that the Pickens ousted and excluded the Johnsons from possession without right; that the Johnsons had not abandoned the premises or their rights under the lease; and that the Pickens were liable in damages to the Johnsons for their conduct.

The actions were previously tried resulting in a judgment for the Pickens, and the Johnsons were ordered to transfer the liquor license to the Pickens. That was done and in the second trial $4,500 of the damages awarded to the Johnsons was the found value of the liquor license. An appeal was taken from the judgment after the first trial, the main grounds being insufficiency of the evidence to support it. The judgment was reversed on that ground and several matters were determined. (*Pickens* v. *Johnson,* 107 Cal.App.2d 778 [238 P.2d 40].) The Pickens based their claim of a violation of the lease on a clause in which the Johnsons, lessees, agreed not to permit any liens to be filed against the premises, asserting the levy of the attachment as a violation, and further invoked a clause of the lease which gave them right of reentry for breach. The District Court of Appeal held that there was no breach because the attachment was of merchandise, rather than of premises. It was also determined that under the evidence the Johnsons did not incur the obligations upon which the attachment was based in the Pickens' name or credit and the Johnsons had not abandoned the premises, their lease, or the agreement.

The Pickens assert on this appeal that they were justified in seizing possession of the premises and taking the liquor license from the wall on the premises, or otherwise phrased, the findings of the court to the contrary are not supported by the evidence. They assert that the Johnsons abandoned the premises and that an improper measure of damages was applied.

We have heretofore seen that it was settled by the former appeal (*Pickens* v. *Johnson, supra,* 107 Cal.App.2d 778) that there was no breach of the lease by reason of the levy of the attachment and hence the Pickens had no right to reenter or retain possession of the premises and merchandise on that ground.

The Pickens concede that there is a conflict in the evidence on the question of abandonment of the lease and agreement by the Johnsons and the court in its findings resolved that conflict against them. Thus there is no occasion to discuss the evidence on the subject.

For the first time the Pickens now contend that the business and the premises were a part of a joint enterprise between them and the Johnsons and therefore they had the right to enter and retain possession of the premises and merchandise. They point to evidence that the liquor license was issued in the Johnsons' and their names jointly and that they were parties defendant in the municipal court action and judgment was then given against them as well as the Johnsons. No such proposition was asserted in any of the pleadings or at any other time. Moreover, the lease and agreement squarely refute it. They created a landlord-tenant relation with reference to the premises and the liquor license was one of the things sold by the agreement to the Johnsons. At no time prior to their entry into possession in September did they make any such claim.

The Pickens contend they had a right to enter to obtain the liquor license in order to turn it over to the Board of Equalization as the law required them to do to protect their interest because the failure to operate the business would forfeit the license and that is the reason they entered. Assuming such was the case it would not authorize them to forcibly seize possession of the premises and merchandise and retain them to the exclusion of the Johnsons. There is evidence which negatives that as the purpose of their entry. While there is some conflict, the evidence shows that the Pickens broke the padlocks which had been placed on the door by the marshal and put their own locks on. The Pickens thereupon took possession of the premises. They removed some merchandise therefrom and took down decorations and renovated it. After the attachment was levied on September 14, 1949, the premises were open with a keeper in charge for two days and then padlocked. The Pickens told the Johnsons' bartender who was residing at the premises to remove his personal articles. The Johnsons had made arrangements with a Mrs. Sprouse to borrow the money to discharge the attachment but when she found out the Pickens were in possession she refused to advance it. Mrs. Johnson tendered the rent due under the lease on October 10, 1949,

to the Pickens and demanded possession of the premises; both were refused. Similar tenders and demands were made on November 10th. Also, the Pickens refused to permit the Johnsons to remove their personal belongings. The Pickens posted a notice dated September 14, 1949, on the premises declaring that because of the attachment the Johnsons had broken the lease and agreement (which as we have seen was not true) and unless the attachment was released in three days the Johnsons would lose all rights under the lease and agreement. Finally, the Pickens commenced their action on October 28, 1949, in which they declared that the lease and agreement were broken and they took possession of the property on September 20, 1949, and requested the court to declare that the Johnsons had no right to the property. There is, therefore, sufficient evidence to show an ouster by the Pickens of the Johnsons from the premises, an exclusion of the Johnsons from possession and a forcible entry by the Pickens, all contrary to the Johnsons' rights under the lease and agreement.

The damages of $19,900 awarded the Johnsons consisted of $4,500 for the liquor license and $15,400 for the loss of possession of the premises in violation of the lease. It was found that the value of the use of the premises which is the rental value from September 20, 1949, to January 5, 1953, the end of the lease term, was $400 per month. Evidently the court concluded that this ran from October 21, 1949. The rental under the lease was $225 per month but no claim is made that such amount should be deducted from the $400 use value. The Pickens assert that the only evidence of the use value was based on the assumption that the liquor license would be used on the premises and that to permit recovery of such a use value and also the value of the liquor license is to allow two amounts of damages for the same thing.

There is evidence that the net income from the business was over $7,000 for the 12-month period prior to the unlawful entry and there was evidence that the liquor license alone was worth $10,000. It will be recalled that the lease called for a rental of $225 per month and independent of that the price of the equipment including the license in the agreement was $10,000. It is true that the lease and agreement should be read together, and it was contemplated that the license be used on the leased premises, but a separate price was fixed for the use of the premises (the lease) and the sale of the license and equipment under the agreement. Taking

into consideration the net profit from the business together with the rental price stated in the lease, the court could have properly concluded, as it did, that the value of the use of the premises was $400 per month.

The judgments are affirmed.

Edmonds, J., Traynor, J., Spence, J., and Dooling, J. pro tem.,* concurred.

Dooling, J. pro tem., sat in place of the Chief Justice, who deemed himself disqualified.

CARTER, J., Concurring and Dissenting.—I concur in the judgment on the ground that J. O. Moncur was a de facto judge and that no error was committed; hence the judgment should be affirmed. But I cannot agree with the holding of the majority that a retired justice or judge may be a de jure justice or judge, or that the Judges' Retirement Act (Stats. 1937, p. 2204, as amended) is constitutional insofar as it purports to authorize a justice or judge whose term of office has expired to act in a judicial capacity without, at least, the consent of the parties.

The fallacy of the majority holding in this respect is apparent. In effect the majority holds that section 22a of article IV of the Constitution which empowers the Legislature to provide for retirement salaries for state employees modifies or repeals all provisions of the Constitution relating to the selection, terms of office and extrajudicial activities of justices or judges. (See Cal. Const., art IV, §§ 18 and 20; art. VI, §§ 3, 8, 9, 10, 10a, 18 and 26.) The majority holding also nullifies section 1 of article III of the Constitution providing for the separation of the powers of the state government.

Under the majority holding, the Legislature may, pursuant to section 22a of article IV, extend the term of office of a superior court judge beyond a period of six years fixed by article VI, section 8, of the Constitution and may extend the term of office of a member of the Supreme Court or District Court of Appeal beyond the 12-year period fixed by article VI, sections 3 and 4a, of the Constitution. This is obvious because, under this holding a justice or judge whose term of office has expired, is still a justice or judge although he is entitled to practice law in violation of article VI, section 18, of the Constitution. The chairman of the

---

*Assigned by Acting Chairman of Judicial Council.

Judicial Council by some magic may assign this practicing lawyer-justice or judge to the position of a de jure justice or judge for such period as such chairman and such lawyer-justice or judge may decide between themselves. If a client should consult such a lawyer-justice or judge while he is under assignment, I presume the latter would say: "While I was a lawyer and entitled to practice law before this assignment, I am now a justice or judge and not entitled to practice law during this assignment, but when I finish this assignment I will again be a lawyer entitled to practice law, and I can then act as your lawyer." While under such assignment and acting as such justice or judge he is not permitted to give legal advice, accept employment or compensation for any service performed as a lawyer. After the assignment is ended, he resumes the practice of law until the next assignment, or he may seek a public office or fill some public position in violation of article IV, section 20, and article VI, section 18, of the Constitution. He may decide to take a journey out of the state but if he is out of the state for a period of longer than 60 days he violates article VI, section 9, of the Constitution. Suppose a retired justice or judge should be elected a district attorney, a city attorney, a member of the Legislature, or some other public office. Obviously under settled principles of constitutional law he would not be eligible for assignment to a de jure judicial position. Would this mean that he would lose his retirement salary as he would not be available to accept an assignment to a judicial position by the chairman of the Judicial Council? We would then have the unique situation that some retired justices or judges would be eligible for assignment and others would not. The assignment by the chairman of the Judicial Council of such a lawyer-justice or judge may be for one day or one year or 10 years for service upon any court which such chairman and such retired lawyer-justice or judge may agree upon. All this without popular sanction and in direct violation of constitutional mandates. Just the chairman of the Judicial Council and this lawyer-justice or judge determine when he is a lawyer and when he is a judge and where he will sit when he is a judge. When he is a lawyer he is subject to the provisions of the State Bar Act and must pay his State Bar dues. When he is a justice or judge he is subject to the above cited constitutional provisions with respect to his extrajudicial activities. He may be a lawyer one day and justice or judge

the next. As a lawyer he is an advocate—a partisan—a confidential adviser of his clients. As a judge he is required to weigh and consider the evidence and the law and render a fair and impartial decision. As a justice or judge he has no fixed term of office except the period of assignment which may or may not be renewed at the discretion of the chairman of the Judicial Council. In fact, he does not know from one day to another whether he is to be a judge or a lawyer. In short, he must have a dual or split personality to qualify for these dual positions overnight.

In describing the type of judge created by section 6 of the Judges' Retirement Act the majority opinion states: "On the other hand section 6 of the Judges' Retirement Act operates to establish a court through the medium of a judicial officer of the state and his assignment thereto by the chairman of the Judicial Council. Where duly assigned under that section such officer obviously is not a judge pro tempore selected by stipulation of counsel to try a particular case as contemplated by section 5 of article VI of the Constitution. The latter section operates independently of the retirement act. Neither controls the other. When a retired judge is duly assigned under the retirement act he is a regular judge of the superior court whose status as such is created by the Legislature pursuant to constitutional authority. Section 5 of article VI is therefore not controlling. It necessarily follows that under the retirement statute no stipulation of counsel is required as a prerequisite to the assignment of a retired superior court judge to preside as a judge of the superior court in any county in the state."

It is obvious from a reading of the foregoing excerpt from the majority opinion that the majority reasons from a false premise; that is, the majority assumes that a retired justice or judge whose term of office has expired is "a judicial officer of the state." This assumption is made notwithstanding the previous statement in said opinion as follows: "In no proper sense is the term of a judge extended by his retirement or by his assignment. Upon his retirement he can no longer of his own volition assume to act as a judge whether he retires at the end of his term, as in this case, or in his mid-term. . . . While not under assignment there is no good reason to say that he would be subject to the provisions of the Constitution and law of the state made specially applicable to regular incumbent judges." In other words, when

not under assignment, the retired justice or judge is returned to the status of a lawyer—a member of the State Bar, if he pays his dues, and is entitled to practice law. How, may I ask, is his status any different from that of any other lawyer or member of the Bar, and what magic has transformed him from a lawyer or member of the Bar into "a judicial officer of the state?" Finally, can it be said that a person may have the status of both a member of the Bar, entitled to practice law, and that of "a judicial officer of the state," at one and the same time? To so hold is to overrule *State Bar of California* v. *Superior Court*, 207 Cal. 323 [278 P. 432], where it was held by a unanimous court as follows (p. 340): "The duly elected and qualified judges of the courts of record in this state who were such at the time said act became effective and who have since become and are such judicial officers were and are not, under the inhibition of section 22 of article VI of the state constitution, entitled to practice law in this state during their and each of their continuance in office, and hence under the express provisions of said State Bar Act have not become and during said period are not members of The State Bar of California, and hence are not subject to the jurisdiction, control and processes conferred upon said corporation and the governing board or other officers thereof by the scope and provisions of said act."

The majority opinion also states: "It may not be assumed that the power of assignment conferred by section 6 of the statute will be improvidently exercised. If perchance it should be the Legislature has complete authority to deal with the subject by appropriate legislation even to the extent of withdrawing the power altogether."

This pronouncement strikes a lethal blow at section 1, article III, of the Constitution known as the separation of powers mandate. Under the majority holding the Legislature, in violation of this mandate, may say to retired justices or judges whose terms of office have expired: "You must continue to serve as justices or judges whenever and wherever we (the Legislature) direct or you may not serve at all—you may or you may not practice law or hold other positions—in other words, you retired justices and judges are under our control and you must obey our mandates." Obviously, if the Legislature may provide that retired justices or judges may be assigned to a judicial position with their consent, it may also provide that they must serve in such judicial positions without their consent and may provide sanctions

for their failure to so serve. This may not set well with even some retired Supreme and appellate court justices who may desire to engage in extrajudicial activities. They may then remember the trite saying with mixed metaphors: "When chickens come home to roost it's a horse of another color."

Another serious result which may flow from the majority holding in this case is that a justice or judge eligible for retirement under the Judges' Retirement Act may be defeated at an election to succeed himself and then retire under the act before his term expires. Under the majority holding here such justice or judge may be assigned by the chairman of the Judicial Council to sit as a justice or judge in any court in which he may be eligible to sit under the act and thus he may continue to function as a justice or judge indefinitely and thereby thwart the will of the electors. I can envision a situation such as this arising in the smaller counties of the state which have only one or two judges and where the defeated retired judge may be so unpopular that he has lost the confidence and respect of a large segment of the population who constitute his constituents. Yet the chairman of the Judicial Council with the consent of such retired judge could foist him onto the people of that county as a judge of the superior court for an indefinite period by the power of assignment which the majority now hold the chairman of the Judicial Council possesses. I believe there can be no refutation of the statement that when the people of this state adopted section 22a of article IV of the Constitution at the general election in 1930 not a single soul who voted for this amendment ever contemplated the far-reaching consequences of their act as now construed by a majority of this court.

The majority refers to section 5, article VI, of the Constitution which authorizes the appointment of a judge pro tempore by stipulation of the parties approved by a judge of the superior court. While this provision has been in the Constitution in one form or another since 1879 its use has been very limited. In my 26 years of law practice, I never knew of it being used, and in the more than 14 years that I have been a member of this court, I do not recall a single case coming before this court which had been heard and decided by a judge pro tempore selected under this provision of the Constitution. I mention this only to call

attention to the fact that it must be the feeling of lawyers and litigants alike that they prefer to have their controversies settled by judges selected in accordance with the constitutional provisions hereinabove cited, and if I am not mistaken the Bar of this state will revolt against the holding of this court which places it within the power of the chairman of the Judicial Counsel and a retired justice or judge to create the judicial tribunal which has the power to determine the rights of the litigants in controversies which may involve their life, liberty, or property in violation of the constitutional mandates which I have heretofore cited.

Much is said in the majority opinion in regard to the desirability of the legislation contained in section 6 of the Judges' Retirement Act. In this respect the majority opinion states: "The purpose of such a plan would seem to be to make available to the judicial department the experience, aptitude and capabilities of retired judges who, with their consent, may be called upon for assistance in the administration of justice. Such a plan is highly desirable not only in particular cases but also when congestion in judicial business in a particular locality has become critical, and oftentimes intolerable." Assuming, without conceding, the factual correctness of the foregoing statement, I have grave doubt as to its wisdom even though it were possible by any reasonable or logical analysis to extend the provisions of section 22a of article IV of the Constitution to authorize the adoption of such a plan. While it is no doubt true that some retired justices or judges may be well qualified to continue functioning in a judicial capacity, it is likewise true that some are not. We certainly have the right to assume that when a judge voluntarily retires, he desires to be relieved of the duties of his judicial office, as retirement means just that. The Legislature has the power under the Constitution to create a sufficient number of superior court judgeships to enable our superior courts to expeditiously handle all legal matters coming before our courts, and it seems to me much more appropriate for the Legislature to exercise this power than to resort to the hybrid type of legislation contained in section 6 of the Judges' Retirement Act.

In this case there is no question that Moncur, the judge who purported to act as such in these consolidated cases, was not a legal judge. The term of office for which he had been elected had expired. He did not run for office again but on the contrary retired as he was authorized to do under

the retirement act. A successor had been chosen for his office, a superior court judge in Plumas County. It is true he was regularly assigned to act as a judge in these cases by the chairman of the Judicial Council but he was not qualified for that position.

There are several constitutional obstacles to his being a de jure judge or to the power of the Legislature under the retirement act or otherwise to authorize such procedure.

The Constitution requires that judges of superior courts *shall be elected* by the voters of the county in which is situated the superior court for which the judge is to be chosen (Cal. Const., art. VI, § 6), but that in case of a vacancy in the office, the Governor shall appoint a person to hold the office until the commencement of the term of a person elected to fill the vacancy which shall be done at the general election next after the first day in January after the vacancy occurs, and his term (six years) shall commence on the first Monday of January after the first day of January next succeeding his election. The term of office is six years. (Cal. Const., art. VI, § 8.) Under these provisions it has been held that a purported judicial act done by a judge after his term of office has expired has no force or effect. (*Martello* v. *Superior Court,* 202 Cal. 400 [261 P. 476]; *Connolly* v. *Ashworth,* 98 Cal. 205 [33 P. 60]; *Mace* v. *O'Reilley,* 70 Cal. 231 [11 P. 721]; *Broder* v. *Conklin,* 98 Cal. 360 [33 P. 211]; *People* v. *Ruef,* 14 Cal.App. 576, 630 [114 P. 48, 54].) The Legislature *cannot extend* the term of a judge fixed by the Constitution (*People* v. *Campbell,* 138 Cal. 11, 16 [70 P. 918]; *People* v. *Markham,* 104 Cal. 232, 235 [37 P. 918]) *nor confer upon him judicial power after his term has expired,* where the Constitution fixes his term of office and mode of selection. (*Hallam* v. *Tillinghast,* 19 Wash. 20 [52 P. 329].)

From the above constitutional provision and authorities it is clear that Moncur was not a judge when the cases were tried and any judicial act done by him was ineffective. He had been elected a superior judge but his term had expired on the day he retired and he was not reelected; his successor had previously been elected and was discharging the duties of that office. Moncur did not hold an appointment by the Governor to fill a vacancy. That is, he was in no different position than a judge who did not run for reelection or did run and was defeated; his term had expired and his successor was occupying the position. Hence if there are no other

provisions justifying a different result, section 6 of the Judges' Retirement Act, which authorizes retired judges to serve as judges after retirement, at least without the stipulation of the parties, is invalid.

Moreover, the effect of permitting the Legislature to authorize judges who are not judges (retired judges to act as such [the retirement act]) violates the fundamental premise of our Constitution that the legislative, judicial and executive departments of our state government shall be separate. (Cal. Const., art. III, § 1.) If the Legislature may at its sole discretion thwart the provisions in the Constitution for the judiciary then there is no longer any true separation of power. Section 6 of the retirement act does just that, because it empowers the chairman of the Judicial Council to create offices of superior court judges where none may exist under the Constitution and in a manner contrary to it.

To overcome the positive constitutional provisions fixing the term of office and mode of selection of superior court judges, the majority opinion proceeds on the theory that the constitutional provisions authorizing the Legislature to establish a retirement system (Cal. Const., art. IV, § 22a) are paramount to the former provisions and that the Legislature may enact measures contrary to them. It stresses the constitutional authority of the chairman of the Judicial Council to assign judges from one area to another, and a retired judge is not a judge until after he has been assigned to serve by the chairman and then only during the assignment.

In reaching that result an analogy is sought to be drawn between the powers granted by the Constitution to the Public Utilities Commission and Industrial Accident Commission.

First, with reference to the assignment authority provision, it is crystal clear that that provision does not purport to repeal the requirement that judges be elected for a fixed term; in case of vacancy and before election the Governor must make an appointment, not the chairman of the Judicial Council. Under the Judicial Council provision it will be noted that "any judge" may be assigned, but in order to derive authority therefrom to assign a retired judge, it would be necessary to conclude that the words mean any person, whether or not he is still a judge in the proper legal sense that he has been elected or appointed under the constitutional provisions above discussed, and his term has not expired. To so construe those words is out of harmony with the rule announced in *Fay* v. *District Court of Appeal*, 200 Cal. 522,

536 [254 P. 896], in holding that amendment to the Constitution with reference to judges pro tempore did not mean that the entire judicial personnel of a District Court of Appeal could consist of pro tempore judges. In *Edler* v. *Hollopeter*, 214 Cal. 427 [6 P.2d 245], it was held that under the Judicial Council amendment an inferior court judge could be assigned to a higher court but he must meet the qualifications of the higher judicial position (admission to practice for five years prior to his election). If that is necessary it would follow that he must also satisfy the qualifications for the position of judge, that is, holding office by election or appointment before expiration of his term. And it has been held that the term "judge" does not apply to a person whose term of office has expired. (*In re Wheelock's Will*, 205 App.Div. 654 [200 N.Y.S. 157].)

It is unreasonable to believe that the framers of the Judicial Council provision or the people in adopting it, intended that the chairman of the council be given such broad authority by the Constitution that he could select a person for a judicial assignment, who had never been a judge, or who had been one, and was defeated for reelection years before or did not run for reelection. I would hold, therefore, that the Judicial Council provision in the Constitution did not confer authority on the chairman to assign as judges other than those who were duly elected, qualified and acting and whose term has not expired.

In the same connection the majority opinion makes the point that retired judges are judicial officers only when they are under assignment by the chairman of the Judicial Council; that at all other times they are lawyers with no official position. Even if that is true, it furnishes no ground for creating a "temporary" judge who has not been elected as required by the Constitution, and in any event it is contrary to reason and logic. In speaking of retired federal judges, the United States Supreme Court has this to say: "By retiring pursuant to the statute a judge does not relinquish his office. The language is that he may retire from regular active service. The purpose is, however, that he shall continue, so far as his age and his health permit, to perform judicial service, and it is common knowledge that retired judges have, in fact, discharged a large measure of the duties which would be incumbent on them, if still in regular active service. *It is scarcely necessary to say that a retired judge's judicial acts would be*

*illegal unless he who performed them held the office of judge.
It is a contradiction in terms to assert that one who has
retired in accordance with the statute may continue to func-
tion as a federal judge and yet not hold the office of a judge.*
The Act does not and, indeed, *could not,* endue him with a
new office, different from, but embracing the duties of the
office of judge. He does not surrender his commission, but
continues to act under it.'' (Emphasis added; *Booth* v.
*United States,* 291 U.S. 339, 350 [54 S.Ct. 379, 78 L.Ed.
836].)

The constitutional retirement provision does not authorize
the use of retired judges in a judicial capacity or sanction
legislative authority therefor in the face of the constitutional
provision requiring election and fixing terms of office for
judges. To hold as does the majority would mean that the
retirement provision repealed by implication the require-
ment of election of judges, a drastic conclusion which could
not have been contemplated by the voters in authorizing a
retirement system.

Serious consequences may flow from the holding of the
majority in this case. Similarly the Legislature could author-
ize the selection and appointment of a retired but defeated
legislator to fill a vacancy in the Legislature or to serve while
the incumbent legislator was incapacitated. The same would
be true of a retired governor. I cannot believe that the con-
stitutional provision for a retirement system was intended
to authorize any such a far-reaching and drastic contailment
of the other provisions in the Constitution, indeed in our
whole system of state government. It is no doubt true that
the retirement authorization includes the right to exact fur-
ther service from the retiree as far as he is concerned, but
when we consider the right of the people as guaranteed by
the Constitution to have their officers, judicial, legislative
and executive, elected by them and serve only for a fixed term,
it is another matter. Requiring that retired judges perform
services after retirement does not carry the right to impose
such judges on the people contrary to the election and term
of office provisions of the Constitution. The matter may
be simply solved by requiring the consent of the parties to
the sitting of a retired judge as was done by the retirement
act before its amendment in 1951. The pertinent reasoning
in this situation is stated in *Fay* v. *District Court of Appeal,
supra,* 200 Cal. 522, 536, where the court held that the amend-
ments to the Constitution providing for pro tempore judges

to sit on the District Court of Appeal did not mean that the entire judicial personnel of a District Court of Appeal could consist of pro tempore judges for: "To so interpret these provisions in said amendments, evidently intended to afford temporary and emergency relief, would be to encourage the violation of a very vital principle of popular government which is none other than that of the right of the people of a commonwealth to have their essential rights, liberties, and interests in respect to person and property heard and determined by courts of last resort, the constituent membership of which is composed of public servants of their own selection. That the people might transfer the direct exercise of this selection to those whom they may have chosen to administer the functions of our representative scheme of government is undoubted, but the text of such transfer, whether embodied in a constitution or a statute, should be plain and unambiguous." The reasoning of the majority opinion is squarely contrary to the Fay case.

The analogy claimed by the majority between the retirement provision and other provisions in the Constitution which are expressly made paramount to other constitutional requirements does not exist. The retirement provision not only does not contain such words of supremacy, but in order to reach the majority's result we have to read the retirement provision as if it does have such words, and then take the further step of implying that authorization for a retirement system includes the right of the Legislature to wipe out the constitutional provisions as to election and term of office of both superior judges and justices of the Supreme Court and District Courts of Appeal.

In summary, the Constitution fixes the term of office of justices of the Supreme Court and District Courts of Appeal and superior court judges. The Legislature has no power to extend such terms. Under no reasonable construction can it be said that such power is granted by the provisions of section 22a of article IV of the Constitution. In fact, the antithesis of such construction is indicated. The following conclusions are inescapable: (1) That by accepting retirement the justice or judge has decided to withdraw from the position held by him and cease rendering service of a judicial nature; (2) during retirement the justice or judge is restored to his status as a member of the Bar and entitled to practice law which a justice or judge may not do while acting in the capacity of a judicial officer of the state; (3) that his posi-

tion as a justice or judge will be filled by a successor in a manner provided for in the Constitution; (4) that he is entitled to his retirement salary as a part of the compensation earned by him for services already rendered and should not be required to render services in the same capacity after retirement; (5) that to do so would be discriminatory and unfair to those who are capable, because those who are incapable of rendering services will receive their retirement salaries without being required to render services after retirement; (6) that the chairman of the Judicial Council has no constitutional power or authority to create judicial positions and select justices or judges to fill them or change the status of a member of the Bar to that of a justice or judge, and the Legislature cannot constitutionally confer such power in view of the constitutional provisions hereinabove cited which expressly provide for the method of selection and term of office of such justices or judges; (7) that the holding of the majority in this case strikes a lethal blow against our republican form of government and is destructive of the democratic processes set up in our Constitution for the selection of judges; (8) and that even if this drastic change in our form of government were dictated by compelling expediency, I could not accept it, because it is contrary to one of the basic concepts of popular government declared in the Constitution of California—that the people by popular vote shall have the right to determine the manner in which their public officers shall be selected and the term of office of such officials.

I hold, therefore, that the provision in the Judges' Retirement Act, *supra*, authorizing the assignment of retired judges to conduct judicial business without the consent of the parties is unconstitutional.

The Johnsons assert, however, that Moncur was a de facto judge and hence the judgments are valid. The Pickens reply that there cannot be a de facto judge unless there is a de jure court or office of judge; that there was no de jure office or court here and thus Moncur could not be a de facto judge.

It has been stated, and said to be the majority rule, that there cannot be a de facto officer where there is no de jure office or, as to judges, there can be no de facto judge where there is no de jure court. (*People* v. *Hecht*, 105 Cal. 621, 629 [38 P. 941, 45 Am.St.Rep. 96, 27 L.R.A. 203], dictum; *Oakland Pav. Co.* v. *Donovan*, 19 Cal.App. 488, 494 [126 P. 388], dictum; *Malaley* v. *City of Marysville*, 37 Cal.App. 638, 640 [174 P. 367], dictum; *Kitts* v. *Superior Court*, 5 Cal.

App. 462, 468 [90 P. 977], dictum; *People* v. *Toal*, 85 Cal.
333, 338 [24 P. 603]; *Ex parte Giambonini*, 117 Cal. 573
[49 P. 732]; *Buck* v. *City of Eureka*, 109 Cal. 504, 512 [30
L.R.A. 409, 42 P. 243]; see cases from other jurisdictions
collected, 99 A.L.R. 294.) That rule has received sharp criti-
cism mainly for the reason that the public policy underlying
the de facto officer doctrine applies with equal force whether
or not there is a de jure office. (See 2 So.Cal.L.Rev. 236,
243; 9 *ibid.* 189, 206; 1 Vanderbilt L.Rev. 651; 46 Mich.L.Rev.
439; 13 Minn.L.Rev. 439; 29 *ibid.* 36; 86 U.Pa.L.Rev. 551.)
The rule has been said to be unsound: "[*F*]*irst*, because an
office created or authorized by the legislature should be treated
as de jure until declared otherwise by a competent tribunal,
since a statute must be received and obeyed by the individual
until questioned in, and set aside by, the courts, because every
statute is presumed to be constitutional; *second*, because the
same reasons behind the rule protecting the acts of a de facto
officer in a de jure office equally apply to acts of a de facto
officer in a de facto office; *third*, because the attack on the
constitutionality of the office should not be made collaterally
by private parties but should be brought in an action expressly
for the purpose of questioning the validity of acts of an officer
under an unconstitutional statute, for to allow individuals
who deal with public officers to question their authority in
every instance would be productive of uncertainty and of a
disordered society; and *fourth*, because, historically, the Eng-
lish rule requiring a de jure office, from which the majority
American rule is derived, is not so productive of harsh re-
sults, since the acts of English officials are not declared void
because the officer was acting under an unconstitutional
statute." (9 So.Cal.L.Rev. 189, 206.) There are as many
authorities to the contrary. (See cases collected, 9 So.Cal.
L.Rev. 207; 99 A.L.R. 294.) There are so many so-called
exceptions to the rule or qualifications as to what is a de jure
office that it cannot be said to have invariable application.
Where an office is created by an unconstitutional statute, a
person holding office under the statute before it is declared
unconstitutional may be a de facto officer. (Statement in
*State* v. *Carroll*, 38 Conn. 449 [9 Am.Rep. 409], approved
in *People* v. *Hecht, supra*, 105 Cal. 621; *Oakland Pav. Co.* v.
*Donovan, supra*, 19 Cal.App. 488; *Reclamation Dist. No. 70*
v. *Sherman*, 11 Cal.App. 399 [105 P. 277]; *Kitts* v. *Superior
Court, supra*, 5 Cal.App. 462.) If the office has potential

existence—has not been established but may be—a person holding it is a de facto officer. (*Buck* v. *City of Eureka, supra,* 109 Cal. 504.) After a judge's term expires and his successor is selected, the former may be a de facto judge. (*Merced Bank* v. *Rosenthal,* 99 Cal. 39 [31 P. 849, 33 P. 732].)

Even if the de jure office rule is applied, it appears that within the reason of the qualification heretofore noted, there is a de jure office—a court, the superior court, and judges of such court—and it was to act in the capacity of such a judge that Moncur was assigned. The method of naming him was invalid but he was a de facto judge. He had a clear color of title by reason of the express legislative authority for his assignment (Judges' Retirement Act, *supra*) and was regularly assigned by the person authorized to make it.

SCHAUER, J., Concurring and Dissenting.—Insofar as the merits of the controversy are concerned I agree with the discussion in the majority opinion; as to the power of the acting judge, I find in our Constitution no authority for, but much in negation of, the chameleonic status of the retired judge envisioned in such majority opinion.

Accordingly, I concur in the judgment of affirmance solely because by a long line of respectable authority the acts of acting pro tempore Judge Moncur have validity as those of a de facto officer performing the duties of a de jure court.